# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM L. SCHOEN, MARY J. NESBIT, ROBIN L. ROSEWICZ, GEORGE E. POOLE, JAMES E. SWARTZ, JR., JOHN SOUZA, AND KAREN SOUZA, individually and as representatives of a class of participants and beneficiaries of the Allegheny Technologies Incorporated Pension Plan; | |
| Plaintiffs | Case No. 2:24-cv-01109-KT |
| v. | **ORAL ARGUMENT REQUESTED** |
| ATI INC., THE ALLEGHENY TECHNOLOGIES INCORPORATED PLAN ADMINISTRATIVE COMMITTEE, STATE STREET GLOBAL ADVISORS TRUST CO., AND JOHN DOES 1–5; | |
| Defendants. | |

## STATE STREET GLOBAL ADVISORS TRUST COMPANY'S MEMORANDUM IN SUPPORT OF ITS <u>MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT</u>

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 2

    I.    SSGA Trust Co. and Its Role With Respect to The ATI Plan. ............................ 2

    II.    Athene. ........................................................................................................... 3

    III.    Plaintiffs' Allegations. ..................................................................................... 3

ARGUMENT ............................................................................................................... 4

    I.    Plaintiffs Lack Standing to Pursue Their Claims. ............................................. 4

    II.    Count I Does Not State a Claim Against SSGA Trust Co. .................................. 4

        A.    No Pleaded Facts Plausibly Allege that SSGA Trust Co. Acted Disloyally. ..................................................................................... 5

            1.    Plaintiffs' Allegations Concerning SSGA Trust Co.'s Relationship With Athene Do Not Raise An Inference of Disloyalty. .................................................................................. 6

            2.    Plaintiffs' Allegations Concerning SSGA's Ownership of ATI Stock Do Not Raise An Inference of Disloyalty. ................... 9

        B.    Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co. Employed an Imprudent Process. ........................................................... 11

            1.    Plaintiffs' Reliance On Interpretative Bulletin 95-1 Is Flawed. ............................................................................... 13

            2.    Athene's Supposed Credit Risk. .................................................. 18

            3.    Athene's Connection to Private Equity And Supposed Financial Risks. ........................................................................ 20

            4.    Other Purported "Red Flags" Regarding Athene. ........................ 23

            5.    Plaintiffs Fail to Allege That SSGA Trust Co. Could Have Selected One of Plaintiffs' Preferred Annuity Providers. ............ 24

        C.    Plaintiffs' Claim of Co-Fiduciary Liability Fails. .................................... 26

    III.    Plaintiffs' Prohibited Transaction Claim (Counts IV) Fails as a Matter of Law. ........................................................................................................... 26

        A.    Plaintiffs Have Not Plausibly Alleged Athene Was a Party In Interest. ......................................................................................... 26

        B.    Any Prohibited Transaction Under Section 406(a) Would Be Exempt by Statutory and Administrative Exemptions. ........................... 29

    IV.    Plaintiffs Lack Statutory Standing to Sue Under 29 U.S.C. §§ 1132(a)(2) and (a)(3). ................................................................................................... 30

CONCLUSION ........................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ...............................................28

*Allen v. GreatBanc Trust Co.*,
  835 F.3d 670 (7th Cir. 2016) ..............................................30

*In re Allergan ERISA Litig.*,
  975 F.3d 348 (3d Cir. 2020)...............................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................9, 11

*Askew v. R.L. Reppert, Inc.*,
  902 F. Supp. 2d 676 (E.D. Pa. 2012) .....................................26

*Bekker v. Neuberger Berman Grp. LLC*,
  2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018)............................29

*Bloom v. AllianceBernstein L.P.*,
  725 F. Supp. 3d 325 (S.D.N.Y. 2024)......................11, 20, 25, 26

*Bussian v. RJR Nabisco, Inc.*,
  223 F.3d 286 (5th Cir. 2000) ..............................................14

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984)......................................................14

*Cho v. Prudential Ins. Co. of Am.*,
  2021 WL 4438186 (D.N.J. Sept. 27, 2021) ..........................*passim*

*Citibank, N.A. v. Aralpa Holdings Ltd. Partnership*,
  2023 WL 5971144 (S.D.N.Y. Sept. 14, 2023).............................22

*Cunningham v. Cornell Univ.*,
  86 F.4th 961 (2d Cir. 2023) ..............................................29

*Frank "Doe" v. WM Operating, LLC*,
  2017 WL 3390195 (E.D. Pa. Aug. 7, 2017) .............................16

*Hughes v. Nw. Univ.*,
  595 U.S. 170 (2022)......................................................4, 13, 14

ii

*Hughes v. Nw. Univ.*,
    63 F.4th 615 (7th Cir. 2023) ................................................................24, 25

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
    2022 WL 973581 (W.D. Pa. Mar. 31, 2022) .............................................5, 6, 7, 11

*Johnson v. Radian Grp., Inc.*,
    2009 WL 2137241 (E.D. Pa. July 16, 2009)...............................................6, 11

*Kopp v. Klein*,
    894 F.3d 214 (5th Cir. 2018) ...............................................................15

*Lee v. Verizon Commc'ns, Inc.*,
    837 F.3d 523 (5th Cir. 2016) ...............................................................15

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)........................................................................14

*Marshall v. Carroll*,
    1980 U.S. Dist. LEXIS 17767 (N.D. Cal. Apr. 18, 1980) ......................................27

*Mehling v. N.Y. Life Ins. Co.*,
    163 F. Supp. 2d 502 (E.D. Pa. 2001) .......................................................30

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
    2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016)................................................29

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
    513 U.S. 251 (1995)........................................................................27

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...............................................7, 8

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)................................................................12

*Perez v. First Bankers Tr. Servs.*,
    210 F. Supp. 3d 518 (S.D.N.Y. 2016).................................................5, 6, 13, 27

*Press v. Primavera*,
    685 F. Supp. 3d 216 (S.D.N.Y. 2023)......................................................23

*In re RCN Litig.*,
    2006 WL 1273834 (D.N.J. Mar. 22, 2006)..................................................20

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011)..............................................................12, 26

*Riley v. Murdock,*
    83 F.3d 415 (4th Cir. 1996) ........................................................................13

*Robainas v. Metro. Life Ins. Co.,*
    2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) .................................................16

*Sacerdote v. N.Y. Univ.,*
    328 F. Supp. 3d 273 (S.D.N.Y. 2018)..........................................................26

*Santiago v. Warminster Twp.,*
    629 F.3d 121 (3d Cir. 2010)........................................................................13

*Singh v. Deloitte LLP,*
    123 F.4th 88 (2d Cir. 2024) ................................................................ *passim*

*Skidmore v. Swift & Co.,*
    323 U. S. 134 (1944)....................................................................................14

*Sweda v. Univ. of Pa.,*
    923 F.3d 320 (3d Cir. 2019)................................................................ *passim*

*Trenton v. Scott Paper Co.,*
    832 F.2d 806 (3d Cir. 1987)......................................................................5, 7

*Turner v. Schneider Elec. Holdings, Inc.,*
    530 F. Supp. 3d 127 (D. Mass. 2021) .........................................................29

*UFCW Local 56 Health and Welfare Fund v. Brandywine Operating P'ship, L.P.,*
    2005 WL 3555390 (D.N.J. Oct. 28, 2005)..................................................28

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
    570 U.S. 338 (2013)....................................................................................14

**Statutes**

29 U.S.C. § 1002(14)(B)..........................................................................26, 27, 28

29 U.S.C. § 1104....................................................................4, 5, 12, 15, 25

29 U.S.C. § 1105........................................................................................26

29 U.S.C. § 1106....................................................................................26, 29

29 U.S.C. § 1108....................................................................................29, 30

29 U.S.C. § 1132........................................................................................30

Iowa Code § 521E......................................................................................16

N.Y. Ins. Law § 1322 ...................................................................................................16

**Regulations**

29 C.F.R. § 2509.95-1 .................................................................................................12

29 C.F.R. § 2509.95-1(c) ....................................................................................13, 14, 20

29 C.F.R. § 2509.95-1(d) .................................................................................... 14-15

**Other Authorities**

49 Fed. Reg. 9494 (Mar. 13, 1984)..............................................................................30

DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ..................................27

## INTRODUCTION

As Co-Defendant ATI[1] explains in its brief, Plaintiffs' challenge to the widespread and legal use of pension risk transfers ("PRTs") should be dismissed for lack of standing because Plaintiffs have incurred no injury and have not identified any promised retirement benefit they have not received, and the Consolidated Complaint ("Complaint" or "CC") should also be dismissed because it fails to state a claim. Defendant State Street Global Advisors Trust Company ("SSGA Trust Co.")[2] joins ATI's arguments, which dispose of the case entirely.

SSGA Trust Co. submits this brief to present additional arguments that also compel dismissal as to it. In particular, the Complaint contains no plausible allegation that SSGA Trust Co., a professional independent fiduciary that has selected numerous annuity providers in the context of other PRTs, was so conflicted by the holdings of funds it manages for others that it acted disloyally in selecting Athene—one of the nation's largest PRT providers—for ATI's partial PRT. Nor does the Complaint plausibly allege that SSGA Trust Co.'s fiduciary process for selecting Athene was imprudent; indeed, the Complaint is entirely silent as to SSGA Trust Co.'s process. Finally, the Complaint fails to allege any non-exempt prohibited transaction under ERISA.

For these and the other reasons described more fully below, and for those set forth in ATI's brief, the Complaint against SSGA Trust Co. must be dismissed.

---

[1] Throughout this brief, "ATI" refers collectively to Defendants ATI Inc. and the Allegheny Technologies Incorporated Plan Administrative Committee.

[2] SSGA Trust Co. is a wholly-owned subsidiary of State Street Bank and Trust Company (which in turn is a wholly-owned subsidiary of State Street Corporation), and is one of the legal entities that comprises State Street Global Advisors ("SSGA"), the global investment management business of State Street Corporation.

## BACKGROUND

### I.    SSGA Trust Co. and Its Role With Respect to The ATI Plan.

State Street Corporation ("State Street Corp.") is a global financial services firm and bank holding company headquartered in Boston.[3]  Its investment management business, SSGA, provides asset management, research, and advisory services to corporations, mutual funds, and other institutional investors.[4]  As of December 31, 2023, SSGA had approximately $4.13 trillion in assets under management ("AUM").[5]  SSGA is not the beneficial owner of these assets. Rather, these assets are held in trust for the benefit of its clients and/or the investment funds it advises and those funds' beneficial owners.[6]  Moreover, these funds are primarily invested pursuant to passively-managed index strategies.  Of the $2.5 trillion of these assets invested in equities, over $2.46 trillion—more than 98%—were invested in passively managed strategies.[7]

SSGA Trust Co.'s Independent Fiduciary Services Team ("IFS")—a unit within SSGA— separately offers independent fiduciary services.  Through IFS, SSGA Trust Co. is a leading provider of independent fiduciary services for PRTs and has served as independent fiduciary for over eighty PRTs, including some of the largest on record.[8]

---

[3] CC ¶ 21; Ex. 1, State Street Corp. 2023 10-K at 1, 6–7 (Feb. 15, 2024).  Unless otherwise indicated, "Ex. ___" cites are to exhibits to the accompanying Declaration of Benjamin S. Reilly.

[4] Ex. 1, State Street Corp. 2023 10-K at 6, 8, 178 (Feb. 15, 2024).

[5] *Id.* at 8.

[6] For example, the SPDR Series Trust is a Massachusetts business trust and an open-end management investment company.  Ex. 3, SPDR Series Trust Annual Report (Form N-CSR) at 234 (Sept. 7, 2023).  It consists of 83 SSGA-advised investment funds, including the SPDR Russell 1000 Low Volatility Focus ETF, the SPDR Russell 1000 Momentum Focus ETF, and the SPDR Russell 1000 Yield Focus ETF, each of which tracks components of the Russell 1000 index discussed at p. 8 *infra*.  *Id.* at 6, 9, 12.  The SPDR Series Trust holds securities in trust for the beneficial interest of the 83 investment funds established under the trust.  *Id.* at 234.

[7] Ex. 1, State Street Corp. 2023 10-K at 8, 70.

[8] Ex. 11, *DC DNA: How Independent Fiduciary Services Evolved and What It Means Today*, SSGA (Oct. 31, 2023) at 2, 4, https://tinyurl.com/Ex-28-STATE-STREET (cited at CC ¶ 111

## II.    **Athene.**

Athene Annuity and Life Co. and Athene Annuity & Life Assurance Company of New York (referred to herein as "Athene") are insurance and retirement services companies that, among other things, issue retirement savings products such as annuities.[9]  They are subsidiaries of Athene Holding Ltd., a holding company that also operates Bermuda-based insurance subsidiaries.[10]  Athene is subject to the same insurance requirements and oversight by regulators as other insurers.  Athene is a recognized leader in the PRT field; in 2023, it ranked first in pension annuity sales ($10.4 billion).[11]  The $1.5 billion ATI PRT was one of several PRT transactions Athene was involved in that year.  *See* CC ¶ 132.  To date, Athene has completed 47 PRT transactions totaling $51.8 billion and covering over 560,000 plan participants.[12]

As ATI explains in its arguments, which SSGA Trust Co. joins, Athene is well-capitalized, is highly rated by credit rating agencies, and its annuities are protected against default by multiple layers of protection, each of which would have to fail before Plaintiffs could lose a penny in benefits.  *See* ATI MTD at 7–9, 14–20.

## III.    **Plaintiffs' Allegations.**

Relevant to SSGA Trust Co., Plaintiffs William J. Schoen, Mary J. Nesbit, Robin L. Rosewicz, George E. Poole, James E. Schwartz, Jr., John Souza, and Karen Souza ("Plaintiffs")

---

n.3); Ex. 25, Hailey Ross & Jason Woleben, *Pension risk transfer activity hits record high in* 2022, S&P Glob. (Mar 31, 2023), https://tinyurl.com/tnkr3cdv; *see infra* pp. 10–11.

[9] Ex. H to the Memorandum in Support of ATI, Inc.'s and the Allegheny Technologies Incorporated Plan Administrative Committee's Motion to Dismiss Plaintiffs Consolidated Complaint ("ATI MTD"), Athene Holding Ltd. 2023 10-K at 10 (Feb. 27, 2024).

[10] *Id.* at 19, 21.  Athene Holding Ltd. files consolidated financial statements with the SEC reflecting the financial condition of Athene Holding Ltd. and its subsidiaries.  *Id.* at 121.

[11] CC ¶ 132; Ex. 23, Distribution Channels, Athene, https://tinyurl.com/5yyhvh72 (last visited Dec. 5, 2024).

[12] ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 16.

allege that SSGA Trust Co. breached its fiduciary duties of loyalty and prudence by selecting Athene as the annuity provider for the ATI PRT.  CC ¶¶ 149–156.  Plaintiffs do not allege a single fact concerning the process utilized by SSGA Trust Co. in making that selection.  Rather, they assert that SSGA Trust Co. was conflicted in its selection of Athene because SSGA today has corporate relationships with Athene (and its parent, Apollo) and because SSGA supposedly had an incentive to save ATI money because SSGA is an ATI shareholder.  *Id.* ¶¶ 104–108.  Plaintiffs also allege that SSGA Trust Co. engaged in transactions prohibited by ERISA, asserting that Athene was a "party in interest because it provided services to the Plan," *id.* ¶ 172, and that Athene "received more than reasonable compensation for its services" because of the "substantial risk that Athene's retention posed to participants' retirement benefits," *id.* ¶ 173.

ARGUMENT[13]

## I.     Plaintiffs Lack Standing to Pursue Their Claims.

SSGA Trust Co. joins ATI's motion to dismiss on the ground that Plaintiffs lack standing to bring this action because they have incurred no injury.[14]

## II.     Count I Does Not State a Claim Against SSGA Trust Co.

Count I alleges that SSGA Trust Co. violated ERISA §§ 404(a)(1)(A) (duty of loyalty) and 404(a)(1)(B) (duty of prudence), 29 U.S.C. §§ 1104(a)(1)(A), (B).  CC ¶¶ 149–156.  However, the Complaint contains no well-pleaded allegations plausibly alleging that SSGA Trust Co. breached either of these duties in selecting Athene and therefore should be dismissed.

---

[13] SSGA Trust Co. adopts the legal standard articulated by ATI in its memorandum.

[14] Relatedly, each of Plaintiffs' claims fails because Plaintiffs have not shown that they have suffered any losses from the alleged breaches.  *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019) ("[T]he elements of . . . a [fiduciary breach] claim . . . are: (1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan.") (internal quotations omitted), *abrogated on other grounds by Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

### A.    No Pleaded Facts Plausibly Allege that SSGA Trust Co. Acted Disloyally.

The Court should dismiss Plaintiffs' disloyalty claim because Plaintiffs fail to allege any

facts supporting a plausible inference that SSGA Trust Co., a professional independent fiduciary,

acted disloyally.  Plaintiffs' claim of SSGA Trust Co.'s disloyalty due to its relationships with

ATI and Athene, CC ¶¶ 104–108, rests on nothing more than conclusory, speculative, and, in

many cases, illogical allegations.  The fact that State Street Corp., one of the world's largest

financial firms, has unrelated business relationships with both Athene (among other insurers) and

ATI (among other plan sponsors) is insufficient to create a preclusive conflict of interest.

To plead a breach of the duty of loyalty, a plaintiff must show that the fiduciary failed to

"discharge his duties with respect to a plan solely in the interest of the participants" and "for the

exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . .

defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1).  "[T]he duty

of loyalty is grounded in the motivation driving a fiduciary's conduct, and liability will not lie

where a fiduciary's decisions were motivated by what is best for the Plan, even if those decisions

also incidentally benefit the fiduciary." *Johnson v. PNC Fin. Servs. Grp., Inc.*, 2022 WL

973581, at *7 (W.D. Pa. Mar. 31, 2022) (brackets omitted) (quoting *Perez v. First Bankers Tr.

Servs.*, 210 F. Supp. 3d 518, 534 (S.D.N.Y. 2016)).  As the Third Circuit has explained, "the fact

that a fiduciary's action incidentally benefits [the fiduciary] does not necessarily mean that the

fiduciary has breached his duty." *Trenton v. Scott Paper Co.*, 832 F.2d 806, 809 (3d Cir. 1987).

In deciding a motion to dismiss, "courts have found that the allegations must be more than a

'recast of purported breaches of prudence as disloyal acts,'" and "courts 'take into account the

fiduciary's subjective motivation in making a decision.'" *PNC*, 2022 WL 973581, at *7

(brackets and citations omitted).

Plaintiffs rest their threadbare disloyalty claim on the mere allegations that "State Street

5

had financial incentives to advise plan sponsors and administrators like the ATI Defendants to use Athene . . . ." CC ¶¶ 133.  But "a 'potential for a conflict, without more, is not synonymous with a plausible claim of fiduciary disloyalty.'"  *PNC*, 2022 WL 973581, at *7 (quoting *Kopp v. Klein*, 894 F.3d 214, 222 (5th Cir. 2018)) (dismissing claim); *see also Johnson v. Radian Grp., Inc.*, 2009 WL 2137241, at *22 (E.D. Pa. July 16, 2009) (holding that "the mere fact that a fiduciary may have had interests adverse to those of plan participants does not alone state a claim for breach of fiduciary duty under ERISA").  Such is the case here.

### 1. Plaintiffs' Allegations Concerning SSGA Trust Co.'s Relationship With Athene Do Not Raise An Inference of Disloyalty.

*First*, Plaintiffs assert that "State Street is . . . one of the largest shareholders of Apollo" and therefore "had a self-interest in increasing the value of its equity position[]," which was supposedly served by selecting Athene.  CC ¶¶ 106–107.  This fact is not only meaningless but also misleading because SSGA is not the beneficial owner of the Apollo shares, which it holds on behalf of its clients and the investment funds it advises.  *See supra* n.6.  Thus, any change in Apollo's value inures to the benefit or detriment of SSGA's clients, not to SSGA, and SSGA's nominal "holding" of these shares cannot sustain an inference of disloyalty on the part of SSGA Trust Co.  Indeed, even where a plaintiff alleges that a defendant received a direct benefit from its fiduciary actions, which Plaintiffs have not done here, courts have held that a "plan fiduciary does not breach its duty of loyalty simply by offering the plan sponsor's financial products, which is a far less attenuated benefit than what Plaintiffs allege here.  Rather, a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else."  *PNC*, 2022 WL 973581, at *7 (quoting *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186 at *11 (D.N.J. Sept. 27, 2021)).  In *PNC*, the court dismissed a disloyalty claim when the complaint's allegation that a service provider was also

hired "for additional trustee services . . . at most, identif[ied] a 'potential for a conflict'" but left "the court to infer that Defendants operated with disloyal motivation just because [the trustee] was compensated for a service." *Id.* (citation omitted); *Scott Paper Co.*, 832 F.2d at 809 ("[T]hat a fiduciary's action incidentally benefits an employer does not necessarily mean that the fiduciary has breached his duty.").

Similar to the facts here, in *Patterson v. Morgan Stanley*, participants in Morgan Stanley's plan sued the company for offering "poorly performing" BlackRock funds as plan investment options, alleging "that Defendants breached their duty of loyalty to the Plan because their decision to offer the [funds] was motivated by a desire to foster a business relationship with Blackrock." 2019 WL 4934834, at *2, 14 (S.D.N.Y. Oct. 7, 2019). The court rejected this theory, explaining that "the mere fact that Morgan Stanley might incidentally benefit from its relationship with BlackRock is not enough to raise an inference of disloyalty by Defendants" and that "Plaintiffs do not actually allege any facts to suggest that Defendants' business relationship with BlackRock was contingent on Defendants offering BlackRock's [funds] in the Plan." *Id.* at *14. "Put simply," the court concluded, "the mere existence of a business relationship between two large financial institutions is not enough to lift Plaintiffs' otherwise deficient disloyalty claims above the bar set by *Twombly*." *Id.* The same is true here of Plaintiffs' allegations concerning SSGA Trust Co. and Athene's relationship. CC ¶ 106. Indeed, here the facts are even more attenuated: Apollo's value—even if impacted by Athene's PRT business—does not impact SSGA's wealth because SSGA has no economic interest in the Apollo stock it "holds."

Moreover, even the SSGA-advised funds' holdings of Apollo stock say nothing about favoritism by SSGA. Over 98% of SSGA's $2.5 trillion in equity assets under management are held in index funds, as to which the portfolio manager (SSGA) invests in the securities

comprising an underlying index.  *See supra* p. 2.  Apollo has been a component of the Russell 1000 Index since 2020.[15]  Accordingly, the fact that SSGA has been among the top ten largest institutional shareholders of Apollo since then, CC ¶ 106, is not plausibly a result of favoritism by SSGA, but largely the result of the fact that SSGA is managing assets that are designed to track the Russell 1000 Index, which is generated by a third party (Russell).  *See, e.g.*, *supra* n.6. Plaintiffs' theory—that the SSGA funds' predominantly passive investments in Apollo influenced the decisions of SSGA Trust Co.'s independent fiduciary business—makes no sense. Such "speculative" allegations concerning SSGA's possible motivations regarding the relevant PRT transaction arising from separate ownership of Apollo stock do not raise an inference of disloyalty.  *In re Allergan ERISA Litig.*, 975 F.3d 348, 355 (3d Cir. 2020).

   ***Second***, Plaintiffs' allegation that SSGA Trust Co. was conflicted because SSGA earns revenue from providing custodial services for Athene's insurance products, CC ¶ 106, fails because Plaintiffs do not allege that such business was "contingent" on, or otherwise related to, SSGA Trust Co. selecting Athene for the ATI PRT.  *Patterson*, 2019 WL 4934834, at \*14. Moreover, that theory is implausible for the additional reason that no SSGA legal entities, including SSGA Trust Co., provide any custody services.  *See* Ex. 1, State Street Corp. 2023 10-K at 177–178 (State Street Corp. provides custody services through its Investment Servicing business, which is separate and distinct from its Investment Management business, of which SSGA is a part).

   ***Third***, Plaintiffs also allege that, since 2018, "State Street has advised plan fiduciaries to select Athene in no fewer than ten PRTs," and suggests that this too is evidence of disloyalty.

---

[15] Ex. 24, *Apollo and Athene to Merge in All-Stock Transaction*, Apollo Glob. Mgmt. Inc. (Mar. 8, 2021), https://tinyurl.com/3fr6ab64 (Apollo "secur[ed] inclusion on the Russell 1000 index in June of 2020").

CC ¶¶ 135–136.  Not so.  The fact that SSGA Trust Co. has recommended Athene in just a fraction of the more than eighty PRTs it has closed does not reflect any sort of favoritism.

Ultimately, Plaintiffs plead no facts showing that SSGA Trust Co.'s relationships with Athene are sufficient to create a plausible inference of a conflict of interest, which requires dismissal of their disloyalty claim against SSGA Trust Co.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (pleading "facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility").

### 2. Plaintiffs' Allegations Concerning SSGA's Ownership of ATI Stock Do Not Raise An Inference of Disloyalty.

Next, Plaintiffs assert that SSGA Trust Co.'s relationship with ATI also compromised its independence.  This assertion is based entirely on the allegation that "[b]ecause State Street held . . . significant positions in [ATI stock]" it "had an interest in favoring ATI by selecting an annuity provider that provided reduced premium payments relative to established and reputable insurance providers, thereby providing a direct financial benefit to ATI and its shareholders." CC ¶ 107.  As with Plaintiffs' allegations concerning SSGA Trust Co.'s relationship with Athene, these allegations do not raise a plausible inference of disloyalty.

Plaintiffs' theory suffers the same fatal flaw as their theory regarding SSGA's holding of Apollo shares.  SSGA, as a nominal holder of ATI stock on behalf of its clients, had no economic interest in the share price of ATI's stock.[16]  *See supra* p. 2 & n.6.  Plaintiffs also overstate the supposed financial benefit to ATI.  Plaintiffs allege that ATI "realize[d] a gain of

---

[16] In any event, SSGA is a large nominal holder of ATI stock for the same reason it is a large nominal holder of Apollo stock: its passive index investing strategies.  *See supra* p. 2 & n.6.  ATI is a component of the S&P 600 Index, which SSGA tracks with multiple funds.  *See, e.g.*, Ex. 4, SSGA SPDR Portfolio S&P 600 Small Cap ETF Annual Shareholder Report (Jun. 30, 2024) (noting fund's strategy is to track the S&P 600 Index and invested in ATI, Inc. stock).

$210 million on its balance sheet" as result of the PRT.  CC ¶ 128.  But the "gain" to which Plaintiffs refer was not *income* to ATI; it was a *reduction* in ATI's consolidated pension liability, which fell from $219 million to $9 million as a result of the PRT, as it would have in a PRT with any annuity provider.[17]  Plaintiffs ignore that ATI actually recognized a $41.7 million income *loss* as a result of the transaction.[18]  Moreover, even if a reduction in ATI's consolidated pension liability could be considered a "gain" to ATI attributable to the selection of Athene specifically (it cannot), Plaintiffs do not plausibly allege any disloyal motive of SSGA Trust Co.  SSGA's alleged holdings of $306.6 million in ATI shares in 2023 (CC ¶ 105) represented a mere 0.0007% of SSGA's total AUM.  *See supra* p. 2.  It is not plausible that SSGA Trust Co. was motivated to select Athene based on a purported "gain" to a company that represented such an immaterial portion of SSGA's AUM.

Plaintiffs' theory is further debunked by SSGA Trust Co.'s selection of providers other than Athene for numerous other PRTs, including for plan sponsors in which SSGA-advised funds held much larger stakes.  For example, in 2022, SSGA Trust Co. served as the independent fiduciary in IBM's $16 billion partial PRT transaction.[19]  SSGA's SEC filings reflect that it held over $6 billion in IBM stock in 2022.[20]  Under Plaintiffs' faulty theory, then, SSGA Trust Co. would have been even more motivated to select Athene (the allegedly "lowest-cost provider") for the IBM PRT, a company in which it held a much larger investment.  But it did not do so; SSGA

---

[17] Ex. 5, ATI Inc. 2023 10-K at 21 (Feb. 23, 2024) (cited at CC ¶ 128).

[18] *Id.* at 22, 34, 37 ("As a result of the annuity buyout, ATI recognized a $41.7 million pretax settlement loss . . . recorded in nonoperating retirement benefit income/expense on the consolidated statement of operations.").

[19] Ex. 6, International Business Machines Corp. 8-K at 3 (Sept. 13, 2022).

[20] Ex. 2, State Street Corp. Form 13F (Nov. 15, 2022) (cited at CC ¶ 104).

Trust Co. selected two other annuity providers for IBM's plan.[21]

Courts consistently reject ERISA loyalty claims, like here, premised on defendants' supposed disloyal motives without some factual basis to plausibly draw a conclusion that an action was disloyally motivated: courts routinely dismiss disloyalty claims that allege a "potential for conflict, without more." *PNC*, 2022 WL 973581, at *7 (citation omitted).  "[T]he mere fact that a fiduciary may have had interests adverse to those of plan participants does not alone state a claim for breach of fiduciary duty under ERISA."  *Radian Grp.,* 2009 WL 2137241, at *22 (dismissing disloyalty claim); *see also Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 337 (S.D.N.Y. 2024) (dismissing disloyalty claim premised on "conclusory allegation" that defendants' actions were driven by self-interest when complaint did "not allege specific facts that directly demonstrate [defendants] acted for a purpose other than providing benefits to participants . . . and defraying reasonable expenses of administering the Plan").

Accordingly, Plaintiffs' disloyalty claim against SSGA Trust Co. should be dismissed. *Iqbal*, 556 U.S. at 678 (pleading "facts that are 'merely consistent with' a defendant's liability . . . stops short of . . . plausibility").

### B.    Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co. Employed an Imprudent Process.

Plaintiffs also allege that SSGA Trust Co. imprudently selected Athene.  CC ¶¶ 149–156.  They assert that, "[b]ased on objective criteria and relative to other providers in the market," SSGA Trust Co. failed to select the "safest annuity available," which, they claim, is required under the DOL's Interpretive Bulletin 95-1 ("IB 95-1"), 29 C.F.R. § 2509.95-1.  CC ¶¶ 152–153.  But Plaintiffs' sparse, conclusory allegations do not plausibly raise an inference of imprudence.

---

[21] Ex. 6, International Business Machines Corp. 8-K at 3 (Sept. 13, 2022).

To the contrary, SSGA Trust Co.'s choice was squarely consistent with decisions made by other fiduciaries in like circumstances, *see supra* p. 3, and raises no inference of imprudence.

ERISA's prudence obligation requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The statutory standard is process-based: "a court assesses a fiduciary's performance by looking at process rather than results, focusing on a fiduciary's conduct in arriving at [a] . . . decision . . . and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Sweda*, 923 F.3d at 329 (internal citations omitted) (omissions in original), *cert. denied*, 140 S. Ct. 2565 (Mar. 30, 2020); *see also Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011) (emphasizing that ERISA's prudence standard focuses on the decision-making used by a plan's fiduciaries, not the after-the-fact results of that process) (affirming dismissal). Where ERISA plaintiffs fail to plead any facts regarding the actual process the fiduciaries used, they face an even higher burden: they must allege sufficient factual matter from which the Court can reasonably infer that the fiduciaries' process was impermissibly flawed. *See Renfro*, 671 F.3d at 327 (affirming dismissal of fiduciary-breach claims because the court was "unable to infer from what is alleged that the process is flawed"); *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (fiduciary-breach claims survive dismissal only "if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed").

Here, the Complaint does not contain a single allegation concerning SSGA Trust Co.'s

process in selecting Athene.  Instead, Plaintiffs rely on a litany of speculative and conclusory allegations about the supposed riskiness of Athene, a leading annuity provider chosen by many other fiduciaries, which they say supports an inference that its selection by SSGA Trust Co.— itself, through IFS, a leading, professional independent fiduciary—could not have been the product of a prudent decision-making process.  These allegations are insufficient to raise an inference of imprudence because they "provide[] nothing more than conclusory assertions that [SSGA Trust Co.] breached [its] duty [of prudence]" and "fails to offer the 'numerous and specific factual allegations' of 'substantial circumstantial evidence' that would allow this Court to reasonably infer a breach . . . ."  *Cho*, 2021 WL 4438186, at *11 (quoting *Sweda*, 923 F.3d at 332); *see Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (courts must disregard "allegations that . . . are no more than conclusions [and thus] not entitled to the assumption of truth") (internal quotations omitted).

## 1.    Plaintiffs' Reliance On Interpretive Bulletin 95-1 Is Flawed.

The only authority Plaintiffs cite in support of their prudence claim is the DOL's non-binding guidance in IB 95-1, which sets forth a non-exhaustive list of six factors fiduciaries "should consider" in selecting an annuity provider for a PRT.  *See* 29 C.F.R. § 2509.95-1(c). Tellingly, no federal court has adopted that standard.  Moreover, Plaintiffs do not allege that SSGA Trust Co. failed to consider the IB 95-1 (or other) factors.  Instead, Plaintiffs focus on language in IB 95-1 that, they claim, requires fiduciaries "to obtain the 'safest annuity provider available.'"  CC ¶ 4.  They are incorrect.

***First***, "no federal court has adopted" the "'safest available' standard urged by the DOL." *Riley v. Murdock*, 83 F.3d 415, 415 (4th Cir. 1996) (unpublished).  Indeed, the DOL's interpretation is unmoored from ERISA's text, which contemplates a wide "range of reasonable judgments a fiduciary may make" for any given decision.  *Hughes v. Nw. Univ.*, 595 U.S. 170,

177 (2022).  DOL's prescriptive, outcome-oriented "safest annuity available" rule contravenes

ERISA's flexible, process-based standard, which is why courts have rejected it as inconsistent

with the statutory text.  *See Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 297–298 (5th Cir. 2000).

This Court should not be the first to adopt it.[22]

*Second*, Plaintiffs' claims fail even under the DOL's non-binding bulletin.  Plaintiffs

assert that, under the DOL's "safest annuity" standard, there can be only one permissible choice

of annuity provider.  *E.g.*, CC ¶¶ 4, 91 155, 167.  The DOL says no such thing.  To the contrary,

the DOL states in IB 95-1 that, "[a] fiduciary may conclude, after conducting an appropriate

search, that *more than one* annuity provider is able to offer the safest annuity available."  29

C.F.R. § 2509.95-1(c) (emphasis added).  In other words, a fiduciary may take into account all of

the relevant factors and conclude that more than one insurer would be prudent.[23]

Furthermore, even IB 95-1 expressly states that its requirement to select the safest

provider(s) available does not apply if, "under the circumstances it would be in the interests of

participants and beneficiaries to do otherwise."  29 C.F.R. § 2509.95-1(c).  *See also id.*

§ 2509.95-1(d) ("there are situations where it may be in the interest of the participants and

beneficiaries to purchase other than the safest available annuity").  A partial PRT, such as here,

---

[22] Even before *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), courts declined to afford the DOL's interpretation deference under *Chevron U. S. A. Inc. v. Natural Resources Defense Council*, *Inc.*, 467 U.S. 837 (1984).  *See, e.g.*, *Bussian*, 223 F.3d at 297.  And because it contravenes ERISA's text and is internally inconsistent, DOL's interpretation "lack[s] the persuasive force" for deference under *Skidmore v. Swift & Co.*, 323 U. S. 134 (1944).  *See generally Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013).

[23] Plaintiffs themselves appear to recognize as much, pointing to at least three other annuity providers that would otherwise be "clear candidates" for "safest annuity available."  CC ¶ 89; *see also id.* ¶ 58.  Indeed, other plaintiffs—represented by the same counsel as Plaintiffs here—have sued SSGA Trust Co. in this District for utilizing one of Plaintiffs' alleged "clear candidates", Prudential.  *See* Class Action Complaint, *Dempsey, et al. v. Verizon Communications Inc., et al.*, No. 1:24-cv-10004 (S.D.N.Y. Dec. 30, 2024).

is one such situation.  Here, the Plan was not terminated in connection with the PRT, and SSGA

Trust Co. owed fiduciary duties to Plan participants whose benefit obligations were not assumed

by Athene and who remained in the Plan.[24]  As Plaintiffs allege, CC ¶¶ 4, 153, 167, Athene

charged less than its competitors.  The resulting savings benefit those participants who remained

in the Plan after the PRT.  The assertion that SSGA Trust Co. could satisfy its fiduciary duties

only by choosing an arguably safer but more expensive insurance provider for this partial PRT

would be inconsistent with its fiduciary obligations to the participants remaining in the Plan not

to incur unreasonable expenses in effecting the PRT.  *See* 29 U.S.C. § 1104(a)(1)(A)(ii) (a

fiduciary shall "defray[] reasonable expenses of administering the plan"); *see generally Lee v.

Verizon Commc'ns, Inc.*, 837 F.3d 523, 540–41 (5th Cir. 2016) (discussing competing claims of

plan transferees and those remaining in the plan premised in part on the potential for incurring

unreasonable expenses in purchasing annuity contracts).

    ***Third***, Plaintiffs' allegations about Athene's unsuitability are largely untethered to the

actual IB 95-1 factors.  They allege that unnamed "industry professionals" focus on four

"prevalent factors" in assessing an insurer's risk profile, CC ¶ 56, none of which appear in IB 95-

1.  And where Plaintiffs challenge Athene's suitability based on factors that do appear in the

Bulletin, their allegations are implausible.  For example, Plaintiffs challenge the adequacy of the

"level of [Athene's] capital and surplus" (IB 95-1 factor 3) by claiming that Athene had a low

surplus-to-liability ratio.  CC ¶¶ 44, 57–60.  But Plaintiffs do not allege that surplus-to-liability

ratio is a commonly used industry metric.  Rather, an insurer's risk-based capital ratio (RBC) is

the primary measure by which insurance regulators evaluate the capital adequacy of insurers, *see*

---

[24] ATI MTD Ex. B, Contract Between SSGA Trust Co. and ATI at § 2(ii) (Sept. 7, 2023) (noting that SSGA Trust Co.'s mandate was to "represent the interests of the Plan and ***all of its participants***") (emphasis added).

15

*Robainas v. Metro. Life Ins. Co.*, 2015 WL 5918200, at *1 (S.D.N.Y. Oct. 9, 2015), and Athene's is strong. Its judicially noticeable SEC filings show $26 billion in regulatory capital and a RBC ratio of 416%[25], double the amount required by the National Association of Insurance Commissioners (NAIC)[26] model statute adopted by Iowa and New York[27], and exceeding the RBC ratios of other large pension annuity providers.[28]

Even assuming that surplus-to-liability ratio is a relevant metric for evaluating the financial health of an insurer, Plaintiffs allegations do not raise an inference of imprudence because they offer an apples-to-oranges comparison. Plaintiffs compare the surplus-to-liability ratio of Athene Annuity and Life Co. (*i.e.*, one subsidiary of Athene Holding Ltd.) to that of the **parent companies** of alleged alternative annuity providers. Plaintiffs allege that subsidiary Athene Annuity and Life Co.'s surplus-to-liability ratio—which, they claim, is "calculated by dividing an insurer's surplus by its liabilities"—was 1.44% as of year-end 2023. CC ¶¶ 55, 58.[29]

---

[25] ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 80–81, 108.

[26] NAIC is the U.S. standard-setting and regulatory support organization created and governed by the chief insurance regulators from all 50 states Ex. 26, *What is the NAIC and what does it do?*, NAIC, https://tinyurl.com/mhpy3afz (last visited Dec. 5, 2024). Because the NAIC is governed by insurance regulators from all fifty states, and sets national standards for the insurance industry, its website is a reliable source of information and judicial notice is proper. *See Frank "Doe" v. WM Operating, LLC*, 2017 WL 3390195, at *7 (E.D. Pa. Aug. 7, 2017) (courts "routinely take judicial notice of such governmental records").

[27] ATI MTD Ex. J, NAIC, Risk-Based Capital (May 9, 2024); Ex. 28, NAIC Risk Based Capital (RBC) for Insurers Model Act, MO-312-1 (Jan. 2012); *see* Iowa Code § 521E; N.Y. Ins. Law § 1322. *See also* ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 29 (reflecting 200% minimum RBC ratio).

[28] *See* ATI MTD at n.35.

[29] It is clear from publicly-available documents that the 1.44% surplus-to-liability ratio that Plaintiffs attribute to "Athene" (CC ¶ 58) is the surplus-to-liability ratio for subsidiary Athene Annuity and Life Co., whose reported surplus and liabilities as of year-end 2023 were $2,865,879,257 and $199,104,571,460, respectively, resulting in the 1.44% ratio Plaintiffs allege at CC ¶ 58. *See* Ex. 9, Fourth Quarter 2023 Statutory Financial Statement for Athene Annuity Life Company (Dec. 31, 2023) at 3.

Plaintiffs allege that this ratio compared unfavorably to the ratio of several other alleged "peer annuity providers,"[30] including New York Life, which "maintained a surplus-to-liability ratio of 12.24%." CC ¶ 58. But Plaintiffs calculate the surplus-to-liability ratio for New York Life Insurance Company, which is a parent company that operates several insurance subsidiaries, including New York Life Insurance and Annuity Company.[31] Plaintiffs' failure to compare Athene and New York Life at the parent company level is no mistake. Parent Athene Holding Ltd.'s 2023 surplus and liabilities were $21.8 billion and $279 billion, respectively,[32] resulting in a surplus-to-liability ratio of 7.8%, which exceeds the national average and the ratios of Nationwide Life Insurance Company (6.77%) and Pacific Life Insurance Company (6.50%) alleged by Plaintiff. CC ¶ 58. In short, Plaintiffs' comparison of subsidiary Athene Annuity and Life Co.'s surplus-to-liability ratio to that of parent insurance companies is not an "apples-to-apples" comparison that could support any inference of imprudence. *Singh v. Deloitte LLP*, 123 F.4th 88, 98 (2d Cir. 2024) (J. Robinson concurring); *see* § II.B.5 *infra*.

Similarly, Plaintiffs allege "on information and belief" that Athene's separate account used to pay ATI retirees (IB 95-1 factor 5) "may also be used to support Athene's payment obligations under other, separate group annuity contracts issued by Athene." CC ¶ 75. This allegation does nothing to undermine the security of Athene's separate account. Regulatory filings show that Athene's separate account maintains a surplus of $875 million in excess of the

---

[30] Notably, Plaintiffs do not allege that any of these supposed "peer annuity providers" are active in the PRT market, let alone that they engage in transactions of similar size to the ATI PRT, further undermining any inference of imprudence. *See* § II.B.5 *infra*.

[31] Ex. 10, New York Life Insurance Company Audited Financial Statements (December 31, 2023), https://tinyurl.com/NY-Life-financials, at 3 (reporting total surplus of $25.3 billion and total liabilities of $206.6 billion); *see also id.* at 8, 97, 101, 102 ("New York Life Insurance Company . . . and its subsidiaries offer a wide range of insurance and investment products.").

[32] ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 108, 122–123.

$50 billion it holds to cover liabilities.[33]  In other words, Athene's separate account has on hand today the money necessary to cover all of its future obligations under separate group annuity contracts, and then some.

**2.    Athene's Supposed Credit Risk.**

Plaintiffs allege that SSGA Trust Co.'s process must have been deficient based, in part, on an October 2022 report authored by NISA Investment Advisors (the "NISA Report").  CC ¶¶ 89–97.  The NISA Report purportedly quantifies a 14% economic loss to beneficiaries whose pension benefit obligations have been transferred to Athene as a result of Athene's "credit risk," which Plaintiffs allege is evidence that Athene's annuities are unsafe.  CC ¶ 89.  NISA quantifies this supposed credit risk by taking a given insurance company's bond spread and subtracting the bond spread of New York Life (NISA's preferred provider).[34]  *Id.*  This analysis is not relevant here.  Despite acknowledging that the "use of a separate account will indeed improve the credit risk of all the insurers [analyzed by NISA], assuming each is willing to offer that additional safeguard," the NISA Report does not even attempt to measure risk for such products or inquire whether all the insurers it analyzed provide the separate account feature.[35]  Because Athene utilizes a separate account to pay ATI retirees, the NISA Report does not offer an "apples-to-

---

[33] *See* ATI MTD Ex. F, Ann. Stmt. of the Condition and Affairs of the Sep. Accts. of Athene Annuity & Life Co. at p. 3, lines 21 (Dec. 31, 2023).  Furthermore, as ATI explains in its brief, the transferred assets in the separate account (and the obligations they support) have additional protections should the insurers become insolvent.  ATI MTD at 7–9, 14–20.

[34] A bond spread over U.S. Treasuries is the difference in yield between a bond and a U.S. Treasury bond with the same maturity.  *Spread the Word: What You Need to Know About Bond Spreads*, FINRA (May 8, 2024), https://tinyurl.com/yc3nkcbp.  Bond spreads are impacted by numerous factors, including supply and demand for bonds and market conditions.  *Id.*

[35] Ex. 12, David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx ("Calculating the adjusted ELB [for separate-account annuities] is outside the scope of this paper[.]") (cited in CC ¶¶ 150–161).

apples" comparison that could support any inference of imprudence. *Singh*, 123 F.4th at 98.

Moreover, the NISA Report offers a single data point that is subject to significant fluctuation, and therefore is not probative of the absence of a prudent process. For example, NISA's most recent report, from December 2024, shows that (i) Prudential is now NISA's preferred provider—with 0% "economic loss to beneficiaries," and (ii) the supposed loss from Athene has declined nearly two-thirds to 4.5%.[36]

In all events, NISA simply represents one opinion of one market actor (one who is an asset manager and a competitor of Athene's[37]), who "argue[s]" that fiduciaries should not "ignore" certain factors under IB 95-1.[38]  But citing that one opinion is not tantamount to plausibly alleging that SSGA Trust Co., in fact, "ignored" relevant information and did not independently conduct an "objective, thorough and analytical search"—as a conscientious fiduciary would do under Plaintiffs' own standard, IB 95-1—rather than blindly following the opinion of one of Athene's competitors. Given this, the NISA Report cannot support Plaintiffs' assertion that Athene is insufficiently creditworthy to be a prudent PRT provider. Further undermining Plaintiffs' reliance on the NISA Report is the fact that other plaintiffs (represented by some of Plaintiffs' own counsel here) recently filed a suit alleging that a PRT to Prudential was imprudent because of Prudential's supposed riskiness—notwithstanding that Prudential is now number one in the September 30, 2024 NISA report. *See* Class Action Complaint, *Dempsey*

---

[36] Ex. 14, PRT Credit Risk Monitor, NISA, https://tinyurl.com/yc2yhhma (last visited Dec. 5, 2024).

[37] NISA's website notes that it is a "leader in liability-driven investing (LDI) and de-risking strategies for defined benefit (DB) pension plans and other liability-driven investors"—*i.e.*, a de-risking alternative to a PRT. Ex. 13, NISA, *Defined Benefit (DB):Pension Risk Management,* https://tinyurl.com/3wrkcmhc (last visited Dec. 5, 2024).

[38] Ex. 12, David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx (cited in CC ¶¶ 150–161).

*v. Verizon*, No. 1:24-cv-10004 (S.D.N.Y. Dec. 30, 2024).

Finally, if all market participants shared the precise same view as to credit-worthiness, then there would be no need for the "objective, thorough and analytical search" that even Plaintiffs' own authority—IB 95-1—suggests.  *See* 29 C.F.R. § 2509.95-1(c) (listing factors). Indeed, courts recognize that "negative analyst reports," like NISA's, "are insufficient to create a duty . . . to question the prudence of [an investment]."  *In re RCN Litig.*, 2006 WL 1273834, at *8 (D.N.J. Mar. 22, 2006) (dismissing complaint).

      **3.**      **Athene's Connection to Private Equity And Supposed Financial Risks.**

The Complaint asserts that Athene's affiliation with Apollo, which separately engages in private equity investing, prevents Athene from being a prudent annuity provider for a PRT because the "mission of private equity does not align with the best interests of policyholders." CC ¶ 46.  But Plaintiffs do not point to any laws precluding insurers like Athene from being owned by companies that also have a private equity business.  Rather, Plaintiffs level generalized grievances with private equity-affiliated insurers.  CC ¶¶ 45–49.  Such "conclusory allegation[s]" do not raise an inference of imprudence.  *Sweda*, 923 F.3d at 340; *Cho*, 2021 WL 4438186, at *11; *Bloom*, 725 F. Supp. 3d at 337.

Plaintiffs' insinuation that Athene is at risk of default because "25% of Apollo-owned companies have defaulted since 2022," CC ¶ 52, is implausible because it fundamentally misconstrues Athene's affiliation with Apollo.  Athene is not "owned" by Apollo's private-equity arm, as Plaintiffs suggest.  CC ¶ 52.  The Moody's report Plaintiffs cite for that statistic refers to the number of Apollo's ***portfolio companies*** that have defaulted—that is, the companies owned by one of Apollo's private equity funds, of which Athene is not one.  Athene is separately regulated by state insurance commissioners and is part of Apollo's "retirement services" business

line, which is separate and distinct from its private equity business.[39]

Plaintiffs also assert that "20% of Athene's portfolio is invested in risky asset-backed securities and leveraged loans" and that Athene has held a "higher ratio" of "unfavorable BBB" collateralized loan obligations (CLOs) "than most other U.S. life industry participants."  CC ¶¶ 51, 54.  First off, this allegation does not plausibly raise an inference of imprudence because Plaintiffs do not explain what "U.S. life industry participants" means.  They do not allege that they are comparing Athene only to other insurers, let alone insurers that participate in the PRT market.  In any event, the allegation that Athene's portfolio is "risky" is directly refuted by Athene's SEC-filed financial statements, which show that over 95% of Athene's investments are "investment grade," bearing the highest NAIC ratings of 1 or 2.[40]  And Plaintiffs' conclusory allegation about BBB CLOs—citing an unnamed "prominent market reporter"—is similarly unavailing:  a BBB rating corresponds to the second-highest NAIC rating and is considered "investment grade."[41]  Indeed, all credit ratings agencies have affirmed Athene's creditworthiness with A1 or A+ ratings.[42]  Plaintiffs themselves allege that only 5% of issuers holding an average rating of "A" from the rating agencies—a rating that is inferior to Athene's average rating—have defaulted over the last twenty years.  CC ¶ 97.[43]

---

[39] Ex. 7, Apollo Global Management, Inc., 2023 Form 10-K at 13, 17 (Feb. 27, 2024) (Athene is part of Apollo's "Retirement Services" business, whereas Apollo's private equity franchise is part of its "Asset Management" business); *see also* ATI MTD at n.18.

[40] ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 86–87.  Plaintiffs do not allege that the less than 5% of Athene's portfolio comprised of "below investment grade" holdings is out of step with industry norms.

[41] *Id.* at 85, 86–87.

[42] *Id.*, Item 1 at 20–21 ("each of our significant insurance subsidiaries is rated 'A+', 'A1' or 'A' by the four rating agencies[.]"); *see also* ATI MTD Ex. H, Athene Holding Ltd. 8-K (June 20, 2024) (AM Best upgraded its rating of Athene's financial strength from A to A+).

[43] To the extent Plaintiffs argue that Athene's purported similarities to three recently-failed insurers is indicative of imprudence, CC ¶¶ 138–148, such allegations fail for the same reason.

Next, Plaintiffs allege that Athene is at risk of default because of its use of Bermuda-based reinsurers. CC ¶¶ 54, 72–74. This too is implausible, because the assertion that Bermuda law is less stringent than other jurisdictions is inapplicable here: judicially noticeable public disclosures demonstrate that Athene requires its Bermuda subsidiaries to adhere to the same capital, risk, and disclosure standards *as its U.S. subsidiaries*.[44] Accordingly, at the end of 2023, Athene's Bermuda-based reinsurance affiliates had billions in surplus assets, a risk-based capital ratio of 400% (double U.S. requirements), and the same A+ and A1 ratings as Athene.[45] In all events, Bermuda is an established, well-regulated jurisdiction for insurance, one of only three globally to be deemed regulatorily equivalent to the U.S. by the NAIC.[46]

Moreover, the use of Bermudian reinsurers is commonplace, as Plaintiffs' own sources show. Other major life insurers that similarly leverage Bermuda reinsurance include AIG, MetLife, and Prudential—the latter of which is NISA's top-rated issuer as of September 30,

---

Judicially noticeable materials show that the failed insurers were in materially different financial positions than Athene at the time they failed—each had been downgraded to C- Financial Strength, reflecting "very weak" balance sheets. Exs. 20–22 (NRSRO credit rating reports); *see Citibank, N.A. v. Aralpa Holdings Ltd. Partnership*, 2023 WL 5971144, at *10 (S.D.N.Y. Sept. 14, 2023) (taking judicial notice of credit rating report). By contrast, all of the credit rating agencies have affirmed Athene's creditworthiness with A1 or A+ ratings.

[44] ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 19 ("We maintain the same reserving principles for our Bermuda reinsurance subsidiaries as we do for our US insurance subsidiaries."); *id.* at 25 ("Under the Bermuda rules, our Bermuda reinsurance subsidiaries are required to file with the BMA group audited financial statements prepared using accounting principles generally accepted in the US (US GAAP)."); *see also id.* at 24.

[45] ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 21 (ratings); *id.* at 108 (Bermuda RBC ratio 400%); *id.* at 187-188 (surplus); ATI MTD Ex. I, Athene 8-K (June 20, 2024) (updated A+ rating from AM Best).

[46] Ex. 27, *NAIC List of Reciprocal Jurisdictions*, NAIC, https://tinyurl.com/mwvdy263 (last visited Dec. 5, 2024).

2024.[47]

### 4.    Other Purported "Red Flags" Regarding Athene.

Plaintiffs further allege that Athene "relies on unreliable private letter ratings" from "smaller private credit rating agencies" Kroll Bond Rating Agency ("KBRA") and DBRS Inc. ("DBRS") to make its investment portfolio appear to be of higher quality.  CC ¶¶ 100–102. Plaintiffs assert that this was a "red flag" from which a lack of prudence can be inferred.  CC ¶¶ 100–102, 135.  Plaintiffs' factual premises are incorrect.  First, KBRA and DBRS are not "suspect" ratings agencies; they are among the ten Nationally Recognized Statistical Rating Organizations (NRSROs), commonly known as credit ratings agencies, recognized by the SEC.[48] Second, Athene discloses both the "NAIC's [quality] designation" and the "NRSRO rating agency designation" of its investments (including CLOs).[49]  In other words, Athene discloses the NAIC's purportedly more "stringent" ratings that Plaintiffs prefer.  CC ¶ 100.  Third, Athene does not rely exclusively on KBRA and DBRS.  Athene utilizes the ratings of S&P, Moody's,

---

[47] *See e.g.*, ATI MTD Ex. M, Prudential Fin'l, Inc. 2023 10-K at 2, 24, 30, 125 (discussing Bermuda-based reinsurance affiliates); ATI MTD Ex. L, MetLife, Inc. 2023 10-K at 108, 326 (same); ATI MTD Ex. N, AIG 2023 10-K at 10 (same).

[48] Ex. 29, U.S. SEC, Off. of Credit Ratings, Staff Report on Nationally Recognized Statistical Rating Agencies at 3–4 (Feb. 2024), https://tinyurl.com/32u7eu7d.  Plaintiffs also assert that SSGA Trust Co. should have recognized as a reg flag the fact that "KBRA and DBRS have been subject to investigations by the SEC regarding their rating practices, resulting in millions of dollars in fines."  CC ¶¶ 102, 135.  This too is implausible.  Each of Plaintiffs' preferred "major rating agencies. . . S&P, Moody's, and Fitch," CC ¶ 100, have been filed millions *or billions* of dollars in connection with their ratings practices.  *See, e.g.*, Exs. 16–19 (Settlement Agreements with SEC and DOJ reflecting penalties ranging from $15,000,000.00 to $1,375,000,000.00).  The Court may take judicial notice of these fines because courts "routinely take judicial notice, on a motion to dismiss, of public filings, such as deferred prosecution agreements entered with the [DOJ]" and "SEC Order[s] . . . part of the SEC's administrative proceedings."  *Press v. Primavera*, 685 F. Supp. 3d 216, 225 (S.D.N.Y. 2023).

[49] *See, e.g.*, ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 85–86.

and Fitch (Plaintiffs' preferred ratings agencies) as well as KBRA and DBRS.[50]  Thus, the notion

that Athene's additional use of KBRA's and DBRS's ratings should have been a cause of

concern to SSGA Trust Co. is implausible.[51]

Plaintiffs also allege that in 2019 Athene was investigated by the State of New York

regarding its PRT business.  CC ¶ 103.  This investigation, however, did not relate in any way to

the alleged riskiness of Athene's annuities.  Rather, it related to a purely jurisdictional matter—

the involvement of employees of Athene's non-New York-domiciled subsidiary in insurance

transactions involving New York residents.[52]  Athene cooperated fully with the investigation and

its New York-domiciled subsidiary was allowed to continue its PRT business in New York.[53]

### 5.    Plaintiffs Fail to Allege That SSGA Trust Co. Could Have Selected One of Plaintiffs' Preferred Annuity Providers.

Finally, for a prudence claim to withstand a motion to dismiss, "a plaintiff must provide

enough facts to show that a prudent alternative action was plausibly available."  *Hughes v. Nw.*

*Univ.*, 63 F.4th 615, 630 (7th Cir. 2023).  "Plaintiffs who rely on circumstantial evidence [to

infer a breach] must . . . provide a sound basis for comparison – a meaningful benchmark – to

show a prudent fiduciary in like circumstances would have selected a different [investment]."

*Cho*, 2021 WL 4438186, at *7 (dismissing complaint); *see Singh*, 123 F.4th at 95–96 (affirming

dismissal for failure to allege a "meaningful benchmark").  That is, "if a plaintiff relies on market

---

[50] *Id.* at 86.

[51] Furthermore, Athene does not over-rely on KBRA and DBRS over the other ratings agencies, as Plaintiffs suggest.  As Athene explains in its SEC filings, "[c]onsistent with the NAIC Process and Procedures Manual," Athene reports the "rating of the lowest NRSRO when the security is rated by two NRSROs" and "the second lowest NRSRO when the security is rated by three or more NRSROs."  *See, e.g.*, ATI MTD Ex. H, Athene Holding Ltd. 2023 10-K at 86.

[52] *See generally*, Ex. 15, Consent Order, *In re Athene Annuity and Life Co., Athene Holding Ltd.*, New York State Dept. of Fin. Servs. (Apr. 13, 2020) (cited CC ¶ 172).

[53] *Id.* ¶¶ 18, 23–28.

comparisons to support a claim based on circumstantial evidence . . . the comparisons must be apples-to-apples." *Singh*, 123 F.4th at 98.  The Complaint fails these standards.

Plaintiffs argue that SSGA Trust Co. should have selected New York Life, TIAA, Nationwide Life, or Pacific Life over Athene.  *See, e.g.*, CC ¶¶ 58, 61, 70.  But the Complaint does not include a single factual allegation plausibly suggesting that Plaintiffs' preferred alternatives were *available here*.  *Hughes*, 63 F.4th at 630.  They do not allege, for example, that New York Life, TIAA, Nationwide Life, or Pacific Life were interested in underwriting the ATI PRT (or even that they engage in PRT transactions of that size), much less at a reasonable price.[54]  These four insurers cannot be apples-to-apples comparisons to Athene if they were not options for SSGA Trust Co. to select.  *See Cho*, 2021 WL 4438186, at *7; *Singh*, 123 F.4th at 95.  Thus, having failed to allege "a meaningful benchmark," Plaintiffs fail to plausibly allege an inference of breach.  *Cho*, 2021 WL 4438186, at *8; *see Hughes*, 63 F.4th at 630.

                            *        *        *

At bottom, Plaintiffs have failed to offer any non-conclusory, non-speculative allegations to support their theory that SSGA Trust Co. engaged in a deficient fiduciary process, mandating dismissal of their claim.  *Sweda*, 923 F.3d at 340; *Cho*, 2021 WL 4438186, at *11; *Bloom*, 725 F. Supp. 3d at 337.  Indeed, Athene's dominant position in the market demonstrates that SSGA Trust Co.'s processes ended in the same result—selection of Athene—as those of many other "prudent [fiduciaries] acting in a like capacity . . . in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B); *see supra* p. 3.  Athene's "wide[] accept[ance] as an appropriate and desirable investment by other market participants" is evidence

---

[54] *See* Ex. 8, Athene Holding Ltd. 2022 10-K at 24 (Feb. 28, 2023) (naming New York Life as competitor for its funding agreement backed notes program but not as group annuities competitor).

of prudence, not imprudence. *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 312 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021). Accordingly, dismissal is warranted.

### C. Plaintiffs' Claim of Co-Fiduciary Liability Fails.

Plaintiffs argue that SSGA Trust Co. is also liable for any "losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a)." CC ¶ 156. As ATI argues in its brief, it is not a fiduciary and did not breach any duties and did not commit any prohibited transactions under ERISA. Further, as described herein, SSGA Trust Co. did not breach any duty either. "Plaintiffs have failed to plausibly allege a breach of fiduciary duty by any of the Defendants. Plaintiffs' claims for co-fiduciary liability must therefore be dismissed." *Bloom*, 725 F. Supp. 3d at 344; *see Renfro*, 671 F.3d at 324 n. 5; *see also Askew v. R.L. Reppert, Inc.*, 902 F. Supp. 2d 676, 687 (E.D. Pa. 2012) ("[T]o pursue a claim for liability . . . under 29 U.S.C. § 1105(a)(2), a plaintiff must aver sufficient factual matter to support a reasonable inference that the first fiduciary's breach caused his co-fiduciary to also commit a breach.").

### III. Plaintiffs' Prohibited Transaction Claim (Counts IV) Fails as a Matter of Law.

Plaintiffs also allege that SSGA Trust Co. committed a prohibited transaction under ERISA § 406(a), 29 U.S.C. § 1106(a), by "caus[ing] the Plan to engage in the annuity transaction" because Athene was supposedly a party in interest. CC ¶¶ 171–175. Plaintiffs have failed to state a claim under this section.

### A. Plaintiffs Have Not Plausibly Alleged Athene Was a Party In Interest.

An essential component of a § 406(a) claim is that the transaction is between the Plan and a "party in interest." 29 U.S.C. § 1106(a). In relevant part, ERISA § 3(14)(B) defines "party in interest" as "a person providing services to such plan." 29 U.S.C. § 1002(14)(B). Plaintiffs' allegation that "Athene was a party in interest because it provided services to the Plan," CC ¶ 172, fails as a matter of law.

*First*, Plaintiffs do not and cannot allege that Athene provided any services to the Plan. They merely allege the purchase of a group annuity contract that "transferred . . . pension obligations to either Athene Annuity and Life Co. or Athene Annuity & Life Assurance Company of New York." CC ¶ 3. The DOL has made clear that the purchase of a contract from an insurer does not constitute the provision of services within the meaning of ERISA § 3(14)(B).

In a 1976 opinion letter, the DOL opined on the applicability of ERISA's prohibited transaction rules in the context of a group insurance policy sold by an insurance company to a company to fund employee benefit plans; in particular, whether an insurance company that sold such a policy to a plan could also sell a fidelity bond to the same plan. *See* DOL, Opinion Ltr. No. 76-36, 1976 WL 5051, at *1 (Jan. 15, 1976). The DOL concluded that there would be no prohibition on the sale of the fidelity bond because the earlier "sale by an insurance company of a group insurance policy to an employer to fund an employee benefit plan would not alone cause the insurance company to become a party in interest to the plan." *Id.* The DOL expressly distinguished the sale of insurance from the provision of services, noting that § 406 would not apply to the purchase of an insurance contract "absen[t] any indication that the insurance company is a party in interest—for example, that the insurance company provides services to the plan *in addition to* the sale of the insurance policy." *Id.* (emphasis added).

Courts have agreed with the DOL's common-sense interpretation that "[t]he fact that an insurance company provides insurance to a plan does not transform it into a party in interest within the meaning of [§ 1002(14)(B)]." *Marshall v. Carroll*, 1980 U.S. Dist. LEXIS 17767, at *27 (N.D. Cal. Apr. 18, 1980), *aff'd sub nom. Donovan v. Carroll*, 673 F.2d 1337 (9th Cir 1982). *See also NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995) ("[A]nnuities are widely recognized as . . . investment products," as opposed to services.). Thus,

Athene's sale of an annuity contract to the ATI Plan does not constitute the provision of services

to the Plan.  Because the Complaint alleges no other basis upon which Athene could be a party in

interest with respect to the Plan, Plaintiffs fail plausibly to allege a prohibited transaction

between ATI and Athene within the meaning of ERISA § 406(a).

     **Second**, even if the sale of an annuity contract could constitute the provision of services,

Count IV still fails because Athene was not a "party in interest" **before** entering into the ATI

PRT.  As ATI explains in its memorandum, only those who are *already* "providing services" to

the plan constitute a "party in interest."  ATI MTD at 27; *see also UFCW Local 56 Health and*

*Welfare Fund v. Brandywine Operating P'ship, L.P.*, 2005 WL 3555390, at *3 (D.N.J. Oct. 28,

2005) ("To be a 'person providing services' under Section 1002(14)(B), a party must have a

relationship with the pension plan that preexists, or is independent of, the relationship created by

the allegedly prohibited transaction." ).  Plaintiffs do not allege that Athene had any relationship

to the Plan prior to the PRT.  As such, Athene was not a party in interest to the Plan prior to the

challenged transaction.  Count IV does not allege a prohibited transaction.

     **Third**, contrary to the premise of Count IV, ERISA does not prohibit routine arm's-

length agreements with service providers and "is not meant to impede necessary service

transactions." *Sweda*, 923 F.3d at 338, 340; *see Albert v. Oshkosh Corp.*, 47 F.4th 570, 585 (7th

Cir. 2022) (rejecting reading under which "routine payments for plan services" are prohibited).

Rather, Plaintiffs must "plausibly allege that [SSGA Trust Co.] had subjective intent to benefit

[Athene] by a use or transfer of Plan assets . . . to state a claim under" § 406(a)(1). *Sweda*, 923

F.3d at 337–339.  Plaintiffs fail to plausibly allege that SSGA Trust Co.'s selection of Athene

was motivated by an intent to benefit Athene for the same reasons that their loyalty claim fails.

*See supra* Argument § II.A.  "After striking conclusory allegations, such as '[SSGA Trust Co.]

served [Athene's] financial interests' . . . from the complaint," *see e.g.*, CC ¶ 133 ("State Street

had financial incentives . . . to use Athene"), and Plaintiffs' implausible disloyalty allegations,

the Court should "not find that [Plaintiffs] alleged facts showing that [SSGA Trust Co.] intended

to benefit [Athene]." *Sweda*, 923 F.3d at 340 (affirming dismissal of § 406(a)(1) claims).

### B.    Any Prohibited Transaction Under Section 406(a) Would Be Exempt by Statutory and Administrative Exemptions.

Finally, even if Plaintiffs had adequately alleged that the ATI PRT was a prohibited

transaction under Section 406(a) (which they have not), Count IV would still fail because the

ATI PRT would fall within one or more of several exemptions to the prohibited transaction

proscriptions under Section 408(b) or issued by the DOL under Section 408(a).

Courts in the First and Second Circuits have held that, because prohibited transactions

under ERISA are expressly defined by reference to statutory and regulatory exemptions, *see* 29

U.S.C. § 1106(a) ("Except as provided in section 1108 . . ."), plaintiffs must allege facts

plausibly suggesting that relevant exemptions are inapplicable.  *See Cunningham v. Cornell

Univ.*, 86 F.4th 961, 975 (2d Cir. 2023) [55]; *Turner v. Schneider Elec. Holdings, Inc.*, 530 F. Supp.

3d 127, 138 (D. Mass. 2021) ("Although defendants must ultimately prove the exemption in §

1108(b)(8), plaintiffs must plead something to show why the exemption would not apply".)

(internal quotations omitted).  The Third Circuit implicitly adopted the same pleading standard

---

[55] *Cunningham* is currently before the Supreme Court.  No. 23-1007 (*cert.* granted Oct. 4, 2024).  Even if the Supreme Court ultimately disagrees with the Second Circuit, Count IV should be dismissed because it is "clear from the face of the Complaint that the [transaction] falls within an available exemption" under § 408.  *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016); *see also Bekker v. Neuberger Berman Grp. LLC*, 2018 WL 4636841, at *9 (S.D.N.Y. Sept. 27, 2018) (even absent a "duty to *negate* the availability of the section 408(b)(8) affirmative defense, the Court must still consider whether the facts alleged in the Complaint plainly *establish* the exemption's applicability.").  As discussed in ATI's memorandum, the Complaint makes clear that the Plan paid Athene "fair market value" for the annuity contract under 29 U.S.C. § 1108(b)(17)(A), (B)(ii).  *See* ATI MTD at 31–32.

when it declined to follow the Seventh Circuit's holding that "exemptions from prohibited transactions, under 29 U.S.C. § 1108, are affirmative defenses, and that 'plaintiff[s] ha[ve] no duty to negate any or all of them' in a complaint." *Sweda*, 923 F.3d at 336 (quoting *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016)). Plaintiffs have not met that standard here. As ATI argues in its memorandum, which SSGA Trust Co. joins, the PRT here is covered by statutory exemptions under ERISA Sections 408(b)(2) and 408(b)(17) as well as Prohibited Transaction Exemption ("PTE") 84-24. *See* ATI MTD at 28, 31–32.

Additionally, PTE 84-14, the Qualified Professional Asset Manager exemption ("QPAM Exemption") also exempts the ATI PRT from Section 406(a). Under the QPAM Exemption, the "restrictions of ERISA section 406(a)(1)(A) through (D) . . . shall not apply to a transaction between a party in interest . . . and an investment fund . . . which is managed by a [QPAM]." 49 Fed. Reg. 9494, 9504 (Mar. 13, 1984). SSGA Trust Co. expressly represented that it was a QPAM in connection with ATI PRT.[56] Plaintiffs do not allege, nor could they, that SSGA Trust Co. has not satisfied any of this exemption's conditions. Thus, the QPAM Exemption applies here. *Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510–11 (E.D. Pa. 2001) ("Plaintiffs do not allege . . . [non]compliance with the requirements of [the exemption]," dismissing claim).

## IV.     Plaintiffs Lack Statutory Standing to Sue Under 29 U.S.C. §§ 1132(a)(2) and (a)(3).

Plaintiffs lack statutory standing to sue under 29 U.S.C. §§ 1132(a)(2) and (a)(3) for the reasons provided by ATI in its memorandum. ATI MTD at Argument § III.

## CONCLUSION

For the foregoing reasons, and those asserted in ATI's memorandum, the Complaint should be dismissed with prejudice.

---

[56] ATI MTD Ex. B, SSGA Trust Co. Agreement at § 4.b (Sept. 7, 2023).

Dated: January 27, 2025

Respectfully submitted,


/s/ *James O Fleckner*
James O. Fleckner (BBO No. 641494)
Alison V. Douglass (BBO No. 646861)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
JFleckner@goodwinlaw.com
ADouglass@goodwinlaw.com


Benjamin S. Reilly (BBO No. 693742)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: (202) 346-4000
Fax: (202) 346-4444
BReilly@goodwinlaw.com

*Counsel for State Street Global Advisors*
*Trust Company*

**<u>CERTIFICATE OF SERVICE</u>**

I, James O. Fleckner, certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 27, 2024.

Dated: January 27, 2025                  <u>/s/ *James O. Fleckner*</u>
                                         James O. Fleckner