IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM L. SCHOEN, et al., ) | Civil Action No. 2:24-cv-01109 |
| ) | |
| Plaintiffs, ) | |
| ) | District Judge Ranjan |
| v. ) | Magistrate Judge Kezia O. L. Taylor |
| ) | |
| ATI, INC., et al., ) | |
| ) | ECF No. 52 |
| ) | ECF No. 54 |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

I. **RECOMMENDATION**

For the following reasons, it is respectfully recommended that the Motion to Dismiss filed by Allegheny Technologies Inc., ECF No. 52, and the Motion to Dismiss filed by State Street Global Advisors Trust Co., ECF No. 54, be GRANTED.

II. **REPORT**

A. **Procedural History**

The instant putative class action case is brought by former employees ("Plaintiffs") of Allegheny Technologies Inc. ("ATI") who themselves, or whose beneficiaries, are participants in ATI's pension plan. ECF No. 1, *generally*. In addition to ATI, Plaintiffs name as defendants the ATI Plan Administrative Committee and State Street Global Advisors Trust Co., ("SSGA"), collectively referred to as "Defendants." *Id.*[1] Plaintiffs allege that Defendants violated fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, in connection with a pension risk transfer ("PRT") transaction that moved approximately $1.5 billion in pension obligations from ATI's ERISA-governed pension plan to Athene Annuity &

---

[1] There are also five John Doe defendants.

Life Assurance Company ("Athene"), a private equity insurance company. *Id*. ¶ 3. Defendants moved to dismiss the Complaint. ECF Nos. 52, 54. Plaintiffs filed a consolidated response in opposition, to which Defendants filed their respective replies, and Plaintiffs filed a sur-reply. ECF Nos. 61, 72, 73, 83-2.[2] On August 28, 2025, the Court heard oral argument on the pending motions. ECF No. 90. Defendants' Motions are ripe for review.

### B.   Factual Background

Plaintiffs, former ATI employees, are participants in its defined benefit pension plan which entitles them to receive a fixed benefit payment each month. ECF No. 1 ¶¶ 10, 26. As an ERISA-backed plan, the pension funds of qualifying plan participants are guaranteed through the Pension Benefit Guaranty Corporation ("PBGC"), which protects pensioners in the event of a plan's failure. *Id*. ¶¶ 31, 32. For defined benefit pension plans, the employer bears the risk of underperformance. *Id*. ¶ 27. In an effort to lessen the risks associated with plan funding, employers can engage in PRT transactions, which is when "an employer offloads all or part of its pension benefit obligations by purchasing group annuity contracts with plan assets from an insurer, who then assumes the responsibility of future benefit payments to employees and retirees covered by the transaction." *Id*. ¶ 28.[3] After a PRT transaction, a plan participant's pension is protected only by state guaranty associations ("SGAs"), which "are not pre-funded like the PBGC and thus offer substantially less protection compared to the PBGC." *Id*. ¶ 32. Furthermore, SGAs only provide coverage up to

---

[2] Amicus Briefs were filed in support of Defendants' respective Motions to Dismiss and in opposition thereto. ECF Nos. 67, 68, 80.

[3] There are three types of PRTs: (1) total buyouts, "in which the plan sponsor terminates the plan and transfers all of the benefit obligations to an insurer through purchase of an annuity contract;" (2) partial buyouts, in which plan sponsors purchase an annuity from an insurance company to satisfy benefit payments to a select group of participants; or (3) buy-ins, in which the plan continues to issue payments to beneficiaries but from a monthly annuity amount paid to the Plan by an insurer." *Id*. ¶ 30. At issue here is a partial buyout.

limits set by state law – which, in many states, is $250,000 "in the present value of annuity benefits." *Id.*

The United States Department of Labor issued regulatory guidance relative to PRT transactions, directing fiduciaries to select "the safest annuity available." *Id*. ¶ 23 (quoting 29 C.F.R. § 2409.95-1). ATI selected SSGA, describing SSGA to the plan participants "as the independent fiduciary charged with choosing an annuity provider." *Id*. ¶ 89. SSGA recommended Athene, and in October 2023, ATI purchased annuity contracts from Athene and "transferred the gross pension obligations and related plan assets for approximately 8,200 Plan participants to Athene[.]" *Id*. ¶ 88. Accordingly, this PRT transaction meant that Plaintiffs were no longer protected by ERISA as Athene became "solely responsible for paying the pension benefits." *Id*. ¶ 92. Plaintiffs submit that SSGA did not conduct a proper investigation when selecting Athene, which they aver "was not the safest available option to select as an annuity provider[.]" *Id*. ¶ 94. Plaintiffs submit that the selection of Athene exposes them "to the substantial risk that Athene's risky, Bermuda-based activities may render it insolvent" such that they would not be able to receive their benefits. *Id*. ¶ 93. Without ERISA protections, "[t]he PRT transaction thus greatly increased the risk – and indeed introduced a substantial risk – that Plaintiffs will not receive the retirement benefits they earned and are owed." *Id*. ¶ 117.

Additionally, Plaintiffs aver that SSGA's selection of Athene was self-serving because "State Street's interests were directly aligned with the ATI Defendants' and Athene's: to maximize profit, even if this meant choosing an annuity provider that did not offer the safest annuity product available and did not have the highest claims paying ability." *Id*. ¶ 87. Specifically, Plaintiffs submit that "Athene's complex investment structure and offshore practices, focus on private equity, questionable creditworthiness, and use of untrustworthy credit ratings agencies[,]" should

3

have alerted SSGA to its inadequacy. *Id.* ¶ 94. Consequently, Plaintiffs assert that if Defendants adhered to ERISA's requirements for selecting an annuity provider, they would not have chosen Athene – a choice that "placed Plaintiffs' pension benefits and future retirement income payments at substantial risk of Athene's insolvency, incapacity, inability, or other unwillingness to perform." *Id.* ¶ 98. Plaintiffs also allege that this PRT transaction "harmed, and will continue to harm [them] over an extended period of time through uncompensated risk[,]" given its elevated risk when compared to traditional providers. *Id.* ¶ 99. In fact, they submit that entering into an annuity agreement with Athene "immediately diminished the present value of Plaintiffs' and other similarly situated ATI retirees and beneficiaries' pension benefits . . . because the market assigns a lower price for an annuity issued by a riskier provider[.]" *Id.* ¶ 114.

Notwithstanding the fact that Plaintiffs' fixed benefit payments continued to be issued, uninterrupted, Plaintiffs aver that Defendants violated their fiduciary duties when they selected Athene as the annuity provider and engaged in prohibited transactions in selecting SSGA and purchasing annuities from Athene. *Id.* at Counts I – V.

**C.    Legal Standard**

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenge the Court's "very power to hear the case." *See Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Under Fed. R. Civ. P. 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Rule 12(b)(1) motions can raise either a facial or factual challenge to the Court's subject-matter jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack challenges the sufficiency of the pleadings, while a factual attack challenges the sufficiency of jurisdictional facts. *Lincoln Ben. Life Co. v. AEI Life,*

4

*LLC*, 800 F.3d 99, 105 (3d Cir. 2015). In resolving a facial attack, the Court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When resolving a factual attack, however, the Court may weigh and consider evidence outside the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). As the party asserting jurisdiction, it is Plaintiffs' burden to show that this Court has jurisdiction over their claims. *See Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).

D. **Discussion**

**Article III Standing**

A threshold issue in this case is whether the Court has jurisdiction over this matter. Here, Defendants bring a facial challenge to standing, ECF No. 58 at 16, arguing that Plaintiffs have failed to plead an actual or imminent injury. ECF No. 58 at 17-28. In response, Plaintiffs submit that they need not "endure the calamity of a default on their retirement benefits before commencing suit[,]" to demonstrate an injury; rather, "Plaintiffs have standing because (a) fiduciary breaches may under Article III be remedied by injunctive relief, including disgorgement, even absent financial loss, and (b) Defendants greatly increased the risk that Plaintiffs will never receive their benefits." ECF No. 61 at 11-12. Succinctly put, "Plaintiffs allege three injuries, each sufficient for standing: (a) the reduced value *today* of their retirement benefits, which they suffered the moment of the Athene annuitization; (b) the invasion of their legal right to be free from fiduciary breaches that infringe their individual interests, recognized under common law; and (c) the substantial risk that Plaintiffs will suffer future pocketbook injury upon Athene's default." *Id*. at 26 (emphasis in original).

"In the absence of Article III standing, a plaintiff has no "case" or "controversy" empowering the federal court to exercise jurisdiction. U.S. Const. art. III, § 2." *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 271 (E.D. Pa. 2024). An action must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction if a plaintiff has not suffered an injury that gives the plaintiff Article III constitutional standing to bring a claim. *See, e.g.*, *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 883, 885 (3d Cir. 2020) (explaining that "[c]onstitutional standing [ ] is properly tested under Rule 12(b)(1)...." and holding that the district court properly dismissed the lawsuit for lack of standing but erred in addressing the merits when doing so). "In the context of a class action case, "the class's standing turns on the named plaintiffs' standing." *Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th 452, 459 (3d Cir. 2024). Where the named plaintiff lacks standing, the case must be dismissed. *See id.* at 461." *Howard v. LVNV Funding, LLC*, No. 3:19-CV-00093, 2025 WL 1530761, at *2 (W.D. Pa. May 29, 2025) (Wiegand, J.); *see also Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 376 (W.D. Pa. 2020) (Ranjan, J.) ("Federal courts must determine that they have jurisdiction before proceeding to the merits of any claim.") (internal citation omitted).

In order to establish standing under Article III, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* Article III's standing principles govern ERISA claims just as they do any other federal claim. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("There is no ERISA exception to Article III.").

This Court recently explained:

6

> Injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338 (cleaned up). To satisfy this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). And an injury is "concrete" if it is "real, and not abstract." *Id.* at 340 (internal quotation marks omitted). Importantly, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right." *Id.* at 341. **Rather, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."** *TransUnion*, 594 U.S. at 414.

*Howard*, 2025 WL 1530761, at *2 (emphasis added). In *Doe v. Pine-Richland Sch. Dist.*, No. 2:24-CV-51, 2024 WL 2058437 (W.D. Pa. May 7, 2024) (Stickman, J.), *appeal dismissed*, No. 24-1898, 2024 WL 4764262 (3d Cir. Aug. 16, 2024), this Court provided:

> "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." [*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)] (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (emphasis in original) (citation omitted). The Supreme Court has, therefore "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a] negations of *possible* future injury' are not sufficient." *Id.* (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

*Id*. at *4.

Guided by the principles of Article III standing, the Court begins its analysis with the Supreme Court's decision in *Thole*, which is directly on point. There, as here, the plaintiffs were participants in a defined benefit plan, who filed a putative class action lawsuit alleging that "that

7

the defendants violated ERISA's duties of loyalty and prudence by poorly investing the assets of the plan." *Thole*, 590 U.S. at 541. Given that the plan was a defined-benefit plan, the plaintiffs continued to receive the monthly payments to which they were entitled "regardless of the plan's value at any one moment and regardless of the investment decisions of the plan's fiduciaries." *Id.* at 540. Finding that the plaintiffs lacked Article III standing, the Supreme Court explained:

> Thole and Smith have received all of their monthly benefit payments so far, and the outcome of this suit would not affect their future benefit payments. If Thole and Smith were to *lose* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less. If Thole and Smith were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more. The plaintiffs therefore have no concrete stake in this lawsuit.

*Id.* at 541 (emphasis in original).

Notably, before *Thole*, the Third Circuit in *Perelman v. Perelman*, 793 F.3d 368 (3d Cir. 2015), similarly found no Article III standing where a participant in a defined benefit plan had "received all distributions under the [p]lan to which he was entitled" and where the "risk of default" was "entirely speculative." *Id*. at 374-375. There, the defendants engaged in questionable investment decisions, resulting in an underfunding of the pension plan. *Id*. at 370. The Court explained that "even if the defendants' dealings resulted in a diminution in Plan assets, they are insufficient to confer standing upon [Plaintiff] absent a showing of individualized harm." *Id*. at 374. The instant case does not warrant a differing outcome.

The Parties apprised the Court of a district court split related to the issue of standing in ERISA contexts. *See Doherty v. Bristol-Myers Squibb Co.*, No. 24-CV-06628, 2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025) (finding Article III standing where complaint alleges substantial risk of

8

default and diminution in value of benefits)[4]; *Piercy v. AT&T*, 24-cv-10608, 2025 WL 2505660 (D. Mass. Aug. 29, 2025) (finding Article III standing); *Konya v. Lockheed Martin Corp.*, 24-cv-00750, 2025 WL 962066 (D. Md. Mar. 28, 2025), *motion to certify appeal granted*, No. CV 24-750, 2025 WL 2050997 (D. Md. July 22, 2025) (finding Article III standing); *but see Camire v. Alcoa USA Corp.*, 24-cv-01062, 2025 WL 947526 (D. D.C. March 28, 2025) (no Article III standing); *Bueno v. General Electric Co.*, No. 1:24-CV-0822, 2025 WL 2719995 (N.D.N.Y. Sept. 24, 2025) (Failure to allege injury-in-fact precludes finding of Article III standing). While the undersigned recognizes and respects the differing opinions and well-reasoned analyses contained in these cases, it is ultimately *Thole* that directs the outcome of our case, and the spirit of this Supreme Court case is most accurately captured in *Camire* and *Bueno*.

There, as here, Plaintiffs were participants in a defined benefit plan provided by their employer, which transferred its pension liabilities to Athene. Finding Plaintiffs lacked Article III standing, the Courts drew parallels between its plaintiffs and the plaintiffs in *Thole*, such as both groups participating in a defined benefit plan and neither experiencing any impact on their monthly payments as a result of the PRT transactions with Athene. *Camire*, 2025 WL 947526, at *4; *Bueno*, 2025 WL 2719995, at * 11.

Here, Plaintiffs do not dispute that they have been receiving the same monthly payments as before the PRT transaction. *See* ECF No. 1 ¶¶ 12-16. In fact, during oral argument, Plaintiffs' counsel stated that "it is absolutely true that Athene has not defaulted on any payment yet." Transcript of Oral Argument at 16. Instead, they are claiming that transforming their rights to

---

[4] Notably, two district courts sitting in New York, recently issued conflicting rulings on the issue of Article III standing, based on essentially the same facts. Compare ECF No. 45, *Doherty*, 24-CV-06628 (S.D.N.Y), with ECF No. 56, *Bueno v. General Electric Co.*, No. 1:24-CV-0822 (N.D.N.Y).

receive their payments from an ERISA backed plan "into a promise that Athene will make annuity payments . . . diminished the value of [their] benefits the moment the annuitization occurred because an interest in annuity payments from Athene is worth much less than an interest in pension benefits from the Plan." ECF No. 61 at 27. Defendants submit that "because there *is no market* for pension benefits[,]" standing cannot be predicated on this theory. ECF No. 58 (emphasis in original). They are correct. Since Plaintiffs received, and will receive, the same monthly payments regardless of the value of the plan, standing cannot be predicated on their theory of diminished value. *See Thole*, 590 U.S. at 543; *see also Camire*, 2025 WL 947526, at *3-4 (*Thole* forecloses degradation of the value of Plaintiffs' benefits as a means of establishing Article III standing); *Bueno*, 2025 WL 2719995, at *12 ("Because Plaintiff have not alleged facts plausibly suggesting that here has been any present loss value of their benefits as a result of the PRT or the selection of Athene specifically" there is no injury that established Article III standing).

Next, Plaintiffs submit that "[t]radition dating to the Founding era" supports their position that, for Article III standing, they need not demonstrate financial loss since they are seeking equitable relief, including disgorgement. ECF No. 61 at 33-35. Both the *Camire* and *Bueno* Courts, relying on *Thole*, rejected the same argument, and the same outcome is warranted here.

As discussed in *Bueno*:

> The Court also sees no reason why there should be any exception to the normal rule to provide a concrete harm as to the requests for other equitable relief such as declaratory judgment, posting of a security, or award of fees and interest. *See Camire v. Alcoa USA Corp.*, 24-CV-1062, 2025 WL 947526, at *5 (D.D.C. Mar. 28, 2025) (rejecting a similar argument as that made here because *Thole* found that some concrete, individualized injury was required despite the equitable nature of the relief sought, and noting that, even if financial injury is not specifically required, there can be no standing where there is "no actual injury at all") (citing *Thole*, 590 U.S. at 544).

10

*Id*. at *14. In *Thole*, the Court explained that since "plan participants possess no equitable or property interest in the plan[,]" their fixed benefit plans do not change based on how the plan is managed. *Id*. at 542-543. Accordingly, given that Plaintiffs have no entitlement to any profits that ATI may have received as a result of the PRT transaction, Article III standing is not supported by this theory.[5]

Next, Plaintiffs submit that they have satisfied the Article III standing requirement because they have sufficiently pled a substantial risk of future harm. ECF No. 61 at 35-38. In an effort to differentiate their situation from the one presented in *Thole*, where the Supreme Court would have rejected the existence of standing based on how the substantial risk of future harm was pled, if presented with this issue, *id*. at 546, Plaintiffs reiterate the averments from their Complaint related to the substantial risk of future harm that they assert was brought on by the PRT transaction. ECF

---

[5] Plaintiffs' argument related to Congressional intent and ERISA's standing provision, ECF No. 61 at 38, is unavailing because Article III standing must exist before statutory standing is applicable, since there is no ERISA exception to standing. *See Thole*, 590 U.S. at 544, 547. Their statute of limitations argument, ECF No. 61 at 38-39, fares no better because standing remains a threshold issue. As the Court explained in *Camire*:

> It may be frustrating to Plaintiffs if they are unable to demonstrate a concrete harm within the six-year limitations period, yet one materializes after six years and a day. But that does not entitle them to bring suit before they have experienced a harm that meets the requirements of Article III. This is especially so because if Athene fails after the limitations period, Plaintiffs would still be able to bring claims against Athene, even if they are no longer able to bring them against the Alcoa Defendants. In this way, an option for recourse remains available to Plaintiffs should an actual harm arise. *See* ECF No. 40, at 5. But until such a harm becomes evident, the court will not set aside the requirements of standing, because "[t]here is no ERISA exception to Article III." *Thole*, 590 U.S. at 547.

*Id*. at *4. The same analysis applies here because, in the event that legal action is warranted beyond the limitations period set forth in ERISA, Plaintiffs would be able to sue Athene.

No. 61 at 36. On the issue of future harm vis-à-vis Article III standing, the Third Circuit Court of Appeals has provided that:

> Indeed, allegations of future injury "suffice if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)). A substantial risk means a " 'realistic danger of sustaining a direct injury.' " *Pennell v. City of San Jose*, 485 U.S. 1, 8, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). While plaintiffs are not required "to demonstrate that it is literally certain that the harms they identify will come about," a "possible future injury"—even one with an "objectively reasonable likelihood" of occurring—is not sufficient. *Clapper*, 568 U.S. at 409-10, 414 n.5, 133 S.Ct. 1138 (emphasis omitted).

*Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152–53 (3d Cir. 2022).

Once again, the analyses set forth in the *Camire* and *Bueno* cases are fitting. In *Camire*, based on essentially the same allegations as set forth in the case at bar, the Court found that "Plaintiffs have failed to sufficiently allege a concrete, impending injury[,]" *id*. at *6, because they failed to "allege that Athene is at a *high* risk of failure – just that it is at a *higher* risk of failure than other annuity providers." *Id*. at *7 (emphasis in original).[6] Here, the same outcome is appropriate because Plaintiffs do no more than plead facts differentiating Athene from other viable annuity providers. Pursuant to *Thole*, as well as Third Circuit precedent, more than just a "possible future injury" is required to confer Article III standing, and it is not pled in this case.[7]

---

[6] Compare ECF No. 1 ¶¶ 55-102, *Schoen v. ATI Inc.*, 24-cv-01109 (W.D. Pa), with ECF No. 28 ¶¶ 49-92, *Camire v. Alcoa USA Corp.*, 24-cv-1062 (D. D.C.).

[7] *See Bueno*, 2025 WL 2719995, at *16 ("Plaintiffs do include a number of allegations that would tend to suggest that Athene is more likely to fail than other identified insurance and annuity providers. But the mere fact that Athene is perhaps more risky than other provider does not suffice to show that there is a *substantial* risk that Athene will fail. *See Camire*, 2025 WL 947526, at *7

Plaintiffs have been receiving their monthly payments just as they were when the plan was administered by their employer. Indeed, regardless of the outcome of this case, Plaintiffs will continue to receive their fixed pension income, "not a penny more," and "not a penny less." *Thole*, 590 U.S. at 542. As such, Plaintiffs lack Article III standing, necessitating the dismissal of this action, and obviating the need for the Court to delve into the merits.

### III. CONCLUSION

The Court is mindful of the seriousness of Plaintiffs' concerns and appreciates the presence of Plaintiffs at argument. But sympathy for Plaintiffs' situation cannot create standing where the Supreme Court has said none exists. Under *Thole*, Article III standing requires a concrete injury, and on the allegations pled, that standard is not met. Accordingly, for the reasons discussed above, it is respectfully recommended that Defendants' Motions to Dismiss be granted for lack of standing.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: October 7, 2025

BY THE COURT

/s/ Kezia O. L. Taylor
KEZIA O. L. TAYLOR
United States Magistrate Judge

---

("Put simply, because Plaintiffs never allege that Athene is substantially likely to fail—just that it is at a greater risk of failure than its competitors—they have failed to establish standing on the basis of an increased risk of harm.")").