**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM L. SCHOEN, *et al.*,

                  Plaintiffs

        v.

ATI INC., *et al.*,

                 Defendants

Civil Action No. 2:24-cv-01109-KT

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION ON
<u>DEFENDANTS' MOTIONS TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 4

I.    The loss of value to Plaintiffs' retirement benefits is a concrete injury. ................. 4

    A.    *Thole* does not undermine, much less foreclose, Plaintiffs' standing. ......................... 7

    B.    Plaintiffs' inability to sell their retirement benefits does not negate standing............. 8

II.   *TransUnion* confirms Plaintiffs' Article III injury. ............................................. 10

    A.    Plaintiffs' alleged injury is closely analogous to a historically actionable contract harm. ............................................................................................................. 10

    B.    Congress's enacted judgment that Plaintiffs may sue under ERISA *before* default confirms their Article III standing. ................................................................... 12

III.  Plaintiffs' loss of ERISA protections is an independent Article III harm. ......................... 13

IV.   Plaintiffs plausibly allege a risk of *future* harm that satisfies Article III. ............................ 14

V.    Plaintiffs have standing even setting aside their economic harm. ........................................ 17

CONCLUSION ................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adams v. Watson*,
　10 F.3d 915 (1st Cir. 1993) ................................................................. 10

*Aldossari v. Ripp,*
　49 F.4th 236 (3d Cir. 2022) ................................................................. 19

*Bueno v. Gen. Electric Co.*,
　2025 WL 2719995 (N.D.N.Y. Sept. 24, 2025) ........................................... 4

*Camire v. Alcoa USA Corp.*,
　2025 WL 947526 (D.D.C. Mar. 28, 2025) ................................................. 4

*Clemens v. ExecuPharm Inc.*,
　48 F.4th 146 (3d Cir. 2022) ................................................................. 15

*Cognex Corp. v. Air Hydro Power, LLC*,
　651 F. Supp. 3d 322 (D. Mass. 2023) ............................................... 11, 14

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
　432 F.3d 286 (3d Cir. 2005) ....................................................... 10, 12, 17

*Doherty v. Bristol-Myers Squibb Co.*,
　2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025) ................................... *passim*

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
　725 F.3d 406 (3d Cir. 2013) ................................................................. 18

*Franchise Tax Bd. of Cal. v. Alcan Alum. Ltd.*,
　493 U.S. 331 (1990) ............................................................................. 6

*Gollust v. Mendell*,
　501 U.S. 115 (1991) .......................................................................... 5, 7

*Hawkins v. C.I.R.*,
　86 F.3d 982 (10th Cir. 1996) ............................................................... 10

*Katz v. Pershing, LLC*,
　672 F.3d 64 (1st Cir. 2012) ................................................................. 11

*Konya v. Lockheed Martin Corp.*,
　2025 WL 962066 (D. Md. Mar. 28, 2025) ....................................... *passim*

*Liberty Life Assur. Co. v. Stone Street Capital, Inc.*,
　93 F. Supp. 2d 630 (D. Md. 2000) ........................................................ 11

*Luca v. McDermott Catena Gift Tr. v. Fructoso-Hobbs SL*,
   102 F.4th 1314 (Fed. Cir. 2024) .................................................................. 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 17

*NECA-IBEW v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ...................................................................... 9

*Perelman v. Perelman*,
   793 F.3d 368 (3d Cir. 2015) ............................................................... 8, 18

*Peters v. Aetna, Inc.*,
   2 F.4th 199 (4th Cir. 2021) ..................................................................... 19

*Piercy v. AT&T Inc.*,
   2025 WL 2505660 (D. Mass. Aug. 29, 2025),
   *adopted by*, 2025 WL 2809008 (Sept. 30, 2025) ................................ *passim*

*Rock Springs Plaza II, Inc. v. Investors Warranty of Am., LLC*,
   618 F. Supp. 3d 262 (D. Md. 2022) .......................................................... 11

*Ross v. Bank of Am.*,
   524 F.3d 217 (2d Cir. 2008) .................................................................... 14

*Saba Capital CEF Opps. 1, Ltd., v. Nuveen Floating Rate Income Fund*,
   88 F.4th 103 (2d Cir. 2023) ...................................................................... 6

*Spokeo Inc. v. Robins*,
   578 U.S. 330 (2016) .......................................................................... 12, 13

*Susinno v. Work Out World, Inc.*,
   862 F.3d 346 (3d Cir. 2017) .................................................................... 12

*Sweda v. Univ. of Penn.*,
   923 F.3d 320 (3d Cir. 2019) .................................................................... 13

*Thole v. U.S. Bank*,
   590 U.S. 538 (2020) ............................................................................ *passim*

*Toll Bros., Inc. v. Township of Readington*,
   555 F.3d 131 (3d Cir. 2009) ............................................................... 6, 10

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................ *passim*

*U.S. Tr. Co. of N.Y. v. New Jersey*,
   431 U.S. 1 (1977) .................................................................................... 6

*Uzuegbunam v. Preczewski*,
    592 U.S. 279 (2021)..................................................................................................... 17

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................................... 15

**STATUTES**

29 U.S.C. § 1021 ............................................................................................................. 9

29 U.S.C. § 1109 ........................................................................................................... 18

29 U.S.C. § 1132 .................................................................................................... *passim*

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 317(2)(a) (1981) ................................................ 11

**RULES**

Fed. R. Civ. P. 72 ............................................................................................................ 4

**REGULATIONS**

29 C.F.R. § 2509 ............................................................................................................. 4

## INTRODUCTION

The Report and Recommendation's ("R&R") conclusion that Plaintiffs fail to plausibly allege Article III standing is incorrect for five reasons.

*First*, when a person's unlawful act reduces the present value of another's financial interest, that is a classic injury-in-fact. Here, the financial interest was Plaintiffs' right to receive a stream of earned retirement benefits in the form of federally insured and regulated pensions paid by ATI's pension plan (the "Plan") and guaranteed by ATI (a publicly traded, multinational corporation). Defendants reduced the value of that financial interest by unlawfully shifting the obligation to pay those benefits from the Plan to Athene, a risky insurer dependent on its Bermuda affiliates. Plaintiffs' injury is thus no different from that of a "purchaser of a AAA-rated bond" who is "deliver[ed] a riskier, B-rated bond," or a company promised "an I.O.U. from a reputable bank" that is instead given "an I.O.U. from one's impecunious cousin." *Piercy v. AT&T Inc.*, No. 24-cv-10608-NMG, 2025 WL 2505660 (D. Mass. Aug. 29, 2025), *adopted by*, 2025 WL 2809008 (Sept. 30, 2025) (concluding that the plaintiffs have standing in a materially identical case).

Put simply, Plaintiffs' standing follows from the "commonsense economic realit[y]" that, all else equal, riskier things are worth less and that Defendants thus made Plaintiffs' right to receive their retirement benefits worth less by transforming their pensions into Athene annuities. *Id.* at *6. The R&R does not acknowledge, much less distinguish, the wealth of precedent holding that this loss-of-value satisfies Article III. And its arguments against this basis for standing—which rest primarily on a misapplication of *Thole v. U.S. Bank*, 590 U.S. 538 (2020)—are unconvincing and have been persuasively rejected by multiple District Courts in materially identical cases.

*Second*, Plaintiffs have suffered injury-in-fact under the controlling, two-part test set forth in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–26 (2021). Courts must first consider whether

the asserted harm has a "close relationship" to one traditionally actionable in American courts. *Id.* at 425. There is such a "close relationship" here because Plaintiffs' injury is just like the actionable harm that arises when a party owes another payment under a contract and breaches that contract by delegating the responsibility for those payments to someone less reliable. Courts then must consider whether Congress has deemed the harm actionable and afford that judgment "due respect" because "Congress's views may be instructive" as to the Article III analysis. *Id.* at 425–26 (quotation omitted). That inquiry confirms Plaintiffs' standing because Congress has enacted into law its judgment that Plaintiffs have already suffered actionable harm, even though Athene has not yet defaulted. 29 U.S.C. § 1132(a)(9) (empowering retirees like Plaintiffs, ejected from their plans, to sue to "assure receipt" of "amounts provided *or to be provided*," including by obtaining forward-looking relief, such as the "posting of security") (emphasis added). But the R&R does not mention *TransUnion*'s controlling framework, much less explain why it does not support standing here.

**Third**, when the Athene transaction ejected Plaintiffs from the Plan and ERISA's protective regime, it deprived them of several valuable legal protections—a "[s]eparate [b]asis for Article III [s]tanding." *Doherty v. Bristol-Myers Squibb Co.*, No. 24-CV-06628 (MMG), 2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025). Before the transaction, Plaintiffs had the right to receive their benefits in the form of ERISA-protected pensions, meaning that Plaintiffs (a) had the right to have those overseeing their benefits act as ERISA fiduciaries (the highest duty known to law); (b) had federal remedies to enforce that right (including ERISA's generous venue and personal jurisdiction provisions); and (c) were protected by ERISA's prophylactic funding requirements, a federal insurance program (the Pension Benefit Guaranty Corporation), and a watchdog agency charged with their protection (the Department of Labor). After the transaction, none of that is true. Plaintiffs argued that this was an independent basis for standing. The R&R does not address the argument.

*Fourth*, Plaintiffs plausibly allege the Athene transaction created a substantial risk they will not receive their retirement benefits—another Article III injury. Multiple District Courts have concluded that plaintiffs alleging materially identical facts about Athene's risk have satisfied this standard, and the Complaint is replete with factual allegations supporting this plausible inference. The R&R does not assume the truth of these factual allegations or draw all reasonable inferences from them in Plaintiffs' favor, as the law requires. In fact, the R&R overlooks key factual allegations that support this basis for standing because the R&R reviewed the initial complaint—*which is not operative*—rather than the operative, consolidated complaint which superseded it. Allegations in the operative complaint (absent from the initial filing) directly rebut the R&R's sole reason for rejecting this basis for standing. *Compare* R&R at 12 ("Plaintiffs do no more than plead facts differentiating Athene from other viable annuity providers"), *with* ECF No. 45-2 ("Compl.") ¶¶ 78–88 (alleging that Athene is not only riskier than other annuity providers but also engages in the same unsafe conduct that contributed to the failure of *four* insurers in *2024*). Indeed, as discussed below, the District Court in *Doherty* highlighted these overlooked allegations when concluding that the identically situated plaintiffs there plausibly alleged "substantial risk."

*Fifth*, even if Plaintiffs had not suffered economic loss from the Athene transaction, they would still have standing under *TransUnion* based on the trust-law tradition that even plaintiffs who suffer no economic loss may sue their fiduciaries for at least disgorgement of ill-gotten gains. That tradition applies to ERISA claims under binding precedent. And that tradition has not been abrogated by *Thole* (or any other case)—a point recognized by multiple post-*Thole* decisions. *E.g.*, *Konya v. Lockheed Martin Corp.*, No. 24-750-BAH, 2025 WL 962066 (D. Md. Mar. 28, 2025) (concluding that this was an "alternative basis for standing" in a materially identical case).

## ARGUMENT

Three District Courts have concluded in cases materially identical to this one that plaintiffs have sufficiently alleged Article III standing. *Doherty v. Bristol-Myers Squibb Co.*, No. 24-CV-006628 (MMG), 2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025); *Piercy v. AT&T Inc.*, No. 24-cv-10608-NMG, 2025 WL 2505660 (D. Mass. Aug. 29, 2025) ("*Piercy* R&R"), *adopted by*, 2025 WL 2809008 (Sept. 30, 2025) ("*Piercy*"); *Konya v. Lockheed Martin Corp.*, No. 24-750-BAH, 2025 WL 962066 (D. Md. Mar. 28, 2025), *appeal pending*. The R&R did not follow those cases, instead relying on two rulings rejecting standing in similar suits. R&R at 9[1] (citing *Bueno v. Gen. Electric Co.*, No. 1:24-CV-0822 (GTS/DJS), 2025 WL 2719995 (N.D.N.Y. Sept. 24, 2025), and *Camire v. Alcoa USA Corp.*, No. 24-1062 (LLA), 2025 WL 947526 (D.D.C. Mar. 28, 2025)).[2]

Of course, none of these decisions binds this Court. But the three pro-standing decisions are far more persuasive than the R&R or the two opinions it followed. This Court should thus reject the R&R and conclude that Plaintiffs have alleged Article III standing. Review is *de novo*.[3]

### I.    The loss of value to Plaintiffs' retirement benefits is a concrete injury.

Plaintiffs plausibly allege that the Athene transaction reduced the value of their retirement benefits. Before the transaction, Plaintiffs' benefits were in the form of federally insured pensions paid by the Plan and guaranteed by ATI. Compl. ¶¶ 3, 19, 28–33. Plaintiffs had a statutory right under ERISA to receive those pensions or at least to receive annuity payments from a secure source. *See* ECF No. 61 ("Pls.' Opp.") at 12–15 (discussing the text and statutory context of 29 U.S.C. § 1132(a)(9) and 29 C.F.R. § 2509.95-1). But the Athene transaction ejected Plaintiffs from

---

[1] Page numbers refer to ECF-generated pagination for all documents on this Court's docket.

[2] In both no-standing cases, the plaintiffs have moved, or will shortly move, for leave to amend the complaint.

[3] Fed. R. Civ. P. 72(b)(3).

the Plan and ERISA's protective regime, lodging the responsibility to pay Plaintiffs' benefits entirely with Athene. Compl. ¶¶ 109, 113–14. And Plaintiffs allege, in copious factual detail, that Athene is not a safe guarantor of Plaintiffs' retirement benefits (and thus that Defendants' selection of Athene as the annuity provider violated ERISA). Compl. ¶¶ 45–103; *see* Pls.' Opp. at 16–18.

Plaintiffs thus allege that the value of their retirement benefits (the streams of income to be paid to them for the rest of their lives) is worth far less after the Athene transaction than it was worth before. Compl. ¶¶ 7, 141–45. And Plaintiffs not only plausibly allege this injury (all that is required at this stage)—they have explained how they will prove and measure that loss with evidence. Pls.' Opp. at 39–40 n.7; *see* Compl. ¶¶ 89–97 (alleging that an independent study based on objective market criteria has measured Athene's risk and the loss of value).[4]

This plausibly alleged loss of value is a classic injury-in-fact under Article III. *Gollust v. Mendell*, 501 U.S. 115, 127 (1991) (holding that the "indirect interest derived through one share of stock is enough to confer standing, however slight the potential marginal increase in the value of the share," and explaining that a bondholder would have Article III standing even if their only recovery would be an "increase" in the "value of [their] bond because the issuer may become a slightly better credit risk"); *Franchise Tax Bd. of Cal. v. Alcan Alum. Ltd.*, 493 U.S. 331, 336

---

[4] There is nothing unusual about the proposition that the value of a stream of income depends in part on the creditworthiness of the entity making the payments. *See Piercy* R&R, 2025 WL 2505660, at *7, *12. In fact, this is a fundamental economic law. It is why (all else equal) homebuyers with worse credit must pay higher interest rates than those with better credit: the value of the former's promise to make a stream of payments is worth less than the latter's, so the lender demands extra compensation. And it is why the prices of Treasury Bonds are higher than those from a risky startup (and why no one would buy the latter if they did not offer a higher yield). *Id.*; *Doherty*, 2025 WL 2774406, at *9 (explaining that "of course" retirees "have a strong interest in not only the *amount* of their monthly benefits but also the *security* [of those benefits]"). The R&R suggests that the value of a stream of payments is based entirely on the *amount* promised. R&R at 9–10. That is incorrect. A promise of $1,000/month from the federal government is worth more than the promise of $1,000/month from Charles Ponzi, and the transformation of the former into the latter is precisely the harm Plaintiffs allege here. *Piercy* R&R, 2025 WL 2505660, at *7, *12.

(1990) (plaintiffs had standing to challenge unlawful act that "reduc[ed]" the future "return on their investments" and "lower[ed] the value of their stockholdings"); *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 (1977) (plaintiff had standing to sue for impairment of bond contract *before default* because the allegedly unlawful act reduced the security of the bond); *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 134–42 (3d Cir. 2009) (plaintiff suffered a "classic form of economic injury" that gave it standing to challenge a zoning ordinance because the ordinance "decreased the value" of the plaintiff's unexercised option to buy the property at a specific price— even though the plaintiff had "no present interest in [the property]").[5] Multiple courts have thus recognized that identically situated retirees have standing on this basis. *Piercy* R&R, 2025 WL 2505660, at *12; *Piercy*, 2025 WL 2809008, at *1; *Doherty*, 2025 WL 2774406, at *14–15, *17.

The R&R does not conclude that Plaintiffs fail to allege facts from which it is reasonable to infer that Athene's promises of payment are riskier and worth less than either Plaintiffs' now-dissolved pensions or the safe annuities to which Plaintiffs were entitled under ERISA. And the R&R does not explain how denying Plaintiffs' standing here is consistent with the precedents cited above. *See Piercy* R&R, 2025 WL 2505660, at *7 ("There is no good reason why a different result should obtain when the financial instrument is an annuity instead of a bond."). Indeed, the R&R does not address those precedents at all. *Compare* Pls.' Opp. at 27–28, 30, *with* R&R at 9–10. Rather, the R&R argues that for two reasons standing "cannot be predicated" on the "diminished

---

[5] *See also, e.g.*, *Luca v. McDermott Catena Gift Tr. v. Fructoso-Hobbs SL*, 102 F.4th 1314, 1323 (Fed. Cir. 2024) (party had standing to challenge allegedly unlawful act because that act "diminish[ed]" the "value" of the party's investment by "diminish[ing] the value" of a trademark); *Saba Capital CEF Opps. 1, Ltd., v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 114–17 (2d Cir. 2023) (plaintiff had standing to challenge bylaw amendment that encumbered the voting rights of plaintiff's shares and thus "diminished" the shares' "value").

value" of Plaintiffs' right to receive retirement payments. R&R at 10. Both arguments have been rejected in well-reasoned opinions, and both are unpersuasive.

### A. *Thole* does not undermine, much less foreclose, Plaintiffs' standing.

The R&R concludes that Plaintiffs' present loss-of-value argument is foreclosed by *Thole*, which the R&R states is "directly on point" and "directs the outcome" of this case. R&R at 7, 9. Respectfully, that is incorrect. *Doherty*, 2025 WL 2774406, at \*9 (refuting argument that *Thole* forecloses standing); *Piercy* R&R, 2025 WL 2505660, at \*4–10, \*13 (same); *Konya*, 2025 WL 962066, at \*7–9 (same). *Thole* did not involve the purchase of annuities; ejecting participants from an ERISA plan; or replacing the guarantor of the plaintiffs' benefits with one far less creditworthy. Rather, the *Thole* plaintiffs alleged that their fiduciaries squandered plan assets by making bad investments, and they lacked standing because they had no "equitable or property interest" in those assets. 590 U.S. at 541–47. That is because *no matter what happened* to the plan's investments, the plaintiffs had a guaranteed right to their pensions from their well-capitalized employer because they (unlike Plaintiffs here) remained participants in a well-funded, ERISA-governed and insured defined-benefit plan. *Id.* (explaining that regardless of what happened to the assets, the plaintiffs' benefits "will not change" because they remain plan participants, so their employer is "on the hook for plan shortfalls" and their benefits remain federally insured).

But none of that is true here: Plaintiffs are no longer Plan participants; they no longer have pensions; Athene (not ATI) is solely responsible for their benefits; and their claim is not based on a loss of Plan assets, but on the loss of their retirement security. Put simply, Defendants transformed Plaintiffs' pensions into a stream of annuity payments guaranteed by *someone else* that is substantially less valuable than what Plaintiffs had a right to. That is the opposite of *Thole*, where Plaintiffs' interest in their pensions was neither changed nor diminished, as they remained defined-benefit plan participants. Thus, the precedent relevant here is not *Thole*, but *Gollust* (which

*Thole* did not overrule, but rather cited with approval) and the cases described *supra* at 5–6—all of which (like this case) concerned unlawful conduct that reduced the present value of the plaintiff's financial interest but which had not yet manifested in realized monetary loss.[6]

*Thole* does not undermine Plaintiffs' standing. *Doherty*, 2025 WL 2774406, at *9; *Piercy* R&R, 2025 WL 2505660, at *4–10, *13; *Konya*, 2025 WL 962066, at *7–9.[7]

### B. Plaintiffs' inability to sell their retirement benefits does not negate standing.

The R&R's only other basis for concluding that Plaintiffs' loss of value does not satisfy Article III is that "there is *no market* for pension benefits." R&R at 10 (quoting Defendants). But even assuming this were correct, the absence of such a market does not defeat standing. *Piercy*, 2025 WL 2505660, at *12 (rejecting argument that standing is absent because the pensions and the annuities at issue "cannot be resold in any market"); *Piercy*, 2025 WL 2809008, at *1 (same).

No case or any other authority supports the contention that a plaintiff lacks standing when the present value of their financial interest is reduced *unless they may realize the loss by selling their infringed interest*. And that proposition—akin to saying that Social Security beneficiaries would lack Article III standing to challenge an unlawful reduction of their benefits because those

---

[6] The R&R thus overlooks the key factual distinction between this case and *Thole* when it suggests that *Thole* forecloses standing here because both cases involve defined-benefit plans. R&R at 9 (stating that a relevant "parallel[]" between Plaintiffs here and the *Thole* plaintiffs was "both groups participating in a defined benefit plan"). The *Thole* plaintiffs were members of their defined-benefit plan both *before* and *after* the unlawful conduct, which is why they had no interest in the squandered plan assets and thus no standing. 590 U.S. at 540–47. Here, Plaintiffs were members of a defined-benefit plan *before* the unlawful conduct (the Athene transaction) but not *after* it, because the transaction ejected them from the Plan and the ERISA regime. That is why they have a concrete interest in this suit: their benefits now depend entirely on Athene; the Plan owes them nothing. This key factual distinction makes all the difference to the Article III analysis.

[7] The R&R's discussion of *Thole* references *Perelman v. Perelman*, 793 F.3d 368 (3d Cir. 2015). That case is materially identical to *Thole* and irrelevant to the standing analysis for the same reasons. *See* Pls.' Opp. at 31–32 (like the *Thole* plaintiffs, the *Perelman* plaintiff complained about the poor investment of plan assets and had not been ejected from the plan).

benefits are not transferable—is erroneous. Article III asks whether *the plaintiff* has suffered injury, and here Plaintiffs allege (and will prove) that loss. *Supra* at 5 & n.4.[8]

When the R&R asserts that alienability is necessary for standing it thus conflates the *value* of an asset with that asset's *market price*. R&R at 10. But an asset's market price is only one way (among many, *see supra* at 5, 9 n.8) to *measure* an asset's value (to market participants, not to all people or a specific plaintiff). *NECA-IBEW v. Goldman Sachs & Co.*, 693 F.3d 145, 165–67 (2d Cir. 2012) ("value" cannot be conflated with "market price"); *Piercy* R&R, 2025 WL 2505660, at *12 ("Alleging, and proving, the value of a financial instrument (transferable or not) does not necessarily depend on whether the instrument is readily marketable, or even marketable at all"); *Piercy*, 2025 WL 2809008, at *1 ("That the annuities here cannot be resold is not controlling" because "[w]hile a secondary market may provide a basis for measuring that harm, the lack thereof does not automatically foreclose its proof."). And it is not even true that there is no market for defined-benefit pensions or the annuities at issue in this case: the Athene transaction *itself* was a deal where both those components were valued and exchanged.

In short, the no-market, no-standing argument lacks legal support, ignores fundamental economic principles, and would mean that no one could sue to protect an asset that is not freely tradeable (*e.g.*, restricted stock or priceless family heirlooms)—even if the defendant's illegal act reduced the asset's value. That is not the law. *Supra* at 5–6; *TransUnion*, 594 U.S. at 425

---

[8] Plaintiffs' loss is measurable even absent a secondary market for the annuities in which Plaintiffs may participate. *Piercy*, 2025 WL 2809008, at *1. Pension actuaries are *required* by ERISA to value the future income streams at issue here—which is what it means to value plan liabilities. *See* 29 U.S.C. § 1021(f)(2)(B)(ii). And every day, streams of future income (*e.g.*, bonds, annuities, and other instruments) are valued and those values depend on the risk of default. Indeed, *Defendants and Athene* valued the pensions and annuities at issue here when they decided on the terms of the transaction. *See* Pls.' Opp. at 18–19 & n.3. Defendants cannot argue that Plaintiffs have suffered *no* loss, when Plaintiffs will be able to *quantify* that loss with evidence and when Defendants themselves made such a valuation. *Piercy* R&R, 2025 WL 2505660, at *12.

("monetary" harm is unnecessary to establish injury-in-fact); *Adams v. Watson*, 10 F.3d 915, 920–21 (1st Cir. 1993) ("currently *realized* economic loss" is not required); *Toll Bros.*, 555 F.3d at 134–42 (decrease in the "value" of an unexercised option sufficed); *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) (Alito, J.) (Article III injury existed even though the asserted injury—loss of control over one's business—was somewhat "difficult to monetize").[9]

## II.    *TransUnion* confirms Plaintiffs' Article III injury.

*TransUnion*, 594 U.S. at 424–26, which postdates *Thole* (and was authored by the same Justice), sets forth a controlling, two-part test to determine whether an asserted injury is sufficiently concrete under Article III. Courts analyzing injury-in-fact must: (A) "assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit"; and (B) "afford due respect" to Congress's views about whether an asserted injury is actionable. *Id.* at 424–25 (quotation omitted). The R&R did not reference, much less apply, *TransUnion* or either prong of this test, although it was central to Plaintiffs' submission. Pls.' Opp. at 26–27, 38. And applying *TransUnion* confirms Plaintiffs' standing.

### A.    Plaintiffs' alleged injury is closely analogous to a historically actionable contract harm.

As in *Piercy*, Plaintiffs allege "a harm that bears a 'close relationship' to harms 'traditionally recognized' as giving rise to suit." 2025 WL 2809008, at *2 (quoting *TransUnion*,

---

[9] The no-market, no-standing argument also ignores Plaintiffs' actual circumstances. Plaintiffs do not want to *sell* their retirement benefits; they want to *rely* on them, as Congress intended. *Hawkins v. C.I.R.*, 86 F.3d 982, 988 (10th Cir. 1996) (ERISA's anti-alienation provision is meant to ensure the benefits "are actually available for retirement"). It would be a bitter irony—and contrary to Congress's will—if the anti-alienation provision it enacted to ensure retirees could rely on their retirement benefits negated Plaintiffs' standing and rendered them incapable of suing under the very cause of action Congress gave them, 29 U.S.C. § 1132(a)(9). And the irony would only be heightened by the fact that there *is* a market for defined-benefit pensions and these annuities (just one that only Defendants and insurers, but not Plaintiffs, may participate in) and that this case originates from just such a market transaction.

594 U.S. at 425). Plaintiffs have a right to be paid their benefits from the Plan or at least a safe annuity provider chosen in their best interest. *See* Pls.' Opp. at 12–15; *Doherty*, 2025 WL 2774406, at *7. And that right is closely analogous to a contractual right to be paid a sum certain from a specific source, or by a third party lawfully delegated that duty. *Doherty*, 2025 WL 2774406, at *7 (analogizing plaintiffs' injury to the contract context and concluding that "[p]articipants in an ERISA-governed plan have at least a quasi-contractual right to their benefits"); *Thole*, 590 U.S. at 542–43 (the right to payment under a defined-benefit pension plan resembles a contractual right).[10]

Put differently, Plaintiffs contend they were injured when Defendants chose an annuity provider whose selection was inconsistent with ERISA, just as a party might sue their contract counterpart for delegating the duty to make payments to someone whose selection is inconsistent with the contract. *See* Restatement (Second) of Contracts § 317(2)(a) (1981) ("A contractual right can be assigned unless the substitution of a right of the assignee for the right of the assignor would . . . *materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him*") (emphasis added). And when such a contractual right is breached through an impermissible delegation, standing exists. *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012).[11] The nature of Plaintiffs' injury here is identical; the only difference is that Plaintiffs' interest is secured by federal statute

---

[10] This is especially so because the original promise of fixed, guaranteed pension benefits is part of the employment bargain. *Thole*, 590 U.S. at 540, 542–43; Compl. ¶¶ 27–30.

[11] *See also, e.g.*, *Cognex Corp. v. Air Hydro Power, LLC*, 651 F. Supp. 3d 322, 327 (D. Mass. 2023) ("The violation of a valid contractual right is an invasion of a legally protected interest" that satisfies Article III); *Liberty Life Assur. Co. v. Stone Street Capital, Inc.*, 93 F. Supp. 2d 630, 636–37 (D. Md. 2000) (exercising jurisdiction to invalidate contractual assignment based on a "material[] increase" in the "burden or risk imposed on plaintiffs"); *Rock Springs Plaza II, Inc. v. Investors Warranty of Am., LLC*, 618 F. Supp. 3d 262, 272, 274–75 (D. Md. 2022) (exercising jurisdiction to rule that a party was entitled to certain information about an assignment, even though the assignee had not yet failed to make timely payments).

rather than merely contract—a distinction immaterial to Article III. *Cf. Danvers*, 432 F.3d at 293 (holding that an "invasion of the [p]laintiff's property rights" satisfied Article III regardless of whether the claim "sound[ed] in tort" or "contract"). This analogy amply satisfies the first prong of *TransUnion*. 594 U.S. at 432 (upholding standing for 1,853 class members because the harm they suffered from federal statutory violations was "close[ly] relat[ed]" to the harms associated with defamation); *Susinno v. Work Out World, Inc.*, 862 F.3d 346, 350–52 (3d Cir. 2017) (similar).

**B.     Congress's enacted judgment that Plaintiffs may sue under ERISA *before* default confirms their Article III standing.**

Plaintiffs have a statutory right under 29 U.S.C. § 1132(a)(9) to sue Defendants for breaching their fiduciary duties by executing the Athene transaction. Defendants concede this point, ECF No. 73 at 25–26, which has been conceded by every defendant in every similar case. *See, e.g.*, *Doherty,* 2025 WL 277406, at *10 & n. 9. And Congress's judgment about whether an asserted injury is actionable demands "due respect." *TransUnion*, 594 U.S. at 425; *Spokeo Inc. v. Robins*, 578 U.S. 330–31, 341 (2016) (Congress's judgment is "instructive and important" because Congress is "well positioned to identify intangible harms that meet minimum Article III requirements"). Indeed, Congress could not have been clearer when, to ensure the security of retirement benefits, it empowered retirees to sue their fiduciaries for terminating them from their pension plans through risky annuity purchases, *even before default*. 29 U.S.C. § 1132(a)(9); *see* Pls.' Opp. at 14.

Section 1132(a)(9) provides that retirees like Plaintiffs may sue to "assure receipt" of benefits "provided *or to be provided*" by the annuity, including by seeking *forward-looking relief*, such as "the posting of security." (emphasis added). And Section 1132(a)(9) empowers retirees to sue for that relief upon their ejection from their plan. *Id.* (affording retirees the immediate right to sue "in the event" that their termination "constitutes" a breach of fiduciary duty). Thus, any

suggestion that Plaintiffs may not sue until their retirement checks bounce, *see* R&R at 13, cannot

be reconciled with Congress's judgment that Plaintiffs may sue *today*. *See* Pls.' Opp. at 38–39.

Hence the *Doherty* Court's conclusion—which applies with equal force here—that "Congress's

determination supports that Plaintiffs suffered an Article III injury." 2025 WL 2774406, at *9.[12]

### III.    Plaintiffs' loss of ERISA protections is an independent Article III harm.

That the Athene transaction stripped from Plaintiffs all their ERISA rights and protections

is a "[s]eparate [b]asis for Article III [s]tanding." *Doherty*, 2025 WL 2774406, at *7.

Before Defendants executed the Athene transaction, Plaintiffs had the right to be paid their

retirement benefits in the form of pensions protected under ERISA. Compl. ¶¶ 3, 27–33, 144. This

meant they had the federal right to have their plan sponsor, administrator, and other functional

fiduciaries act consistent with a "fiduciary standard that is considered the highest known to the

law." *Sweda v. Univ. of Penn.*, 923 F.3d 320, 333 (3d Cir. 2019) (internal quotation and citation

omitted). They had a federal watchdog, the Department of Labor, to police that standard on their

behalf. *Doherty*, 2025 WL 2774406, at *7–8. They were protected by ERISA's prophylactic rules,

*e.g.*, minimum funding requirements, Compl. ¶ 29; 29 U.S.C. § 1082. Their benefits were federally

insured by the PBGC. Compl. ¶ 33; *Thole*, 590 U.S. at 546 n.2. They had federal remedies to hold

Defendants accountable for ERISA violations. 29 U.S.C. § 1132(a). And they enjoyed additional

protections that ensured their rights and remedies were meaningful, including ERISA's broad

---

[12] The R&R treated Congress's judgment that Plaintiffs may sue before default as irrelevant to Article III. R&R at 11 n.5. That was error. *TransUnion*, 594 U.S. at 425–26; *Spokeo*, 578 U.S. at 341; *Doherty*, 2025 WL 2774406, at *4, *9. To be sure, Congress may not "enact an injury into existence" by "transform[ing] something that is not remotely harmful into something that is," *TransUnion*, 594 U.S. at 426, or by elevating to an Article III injury a "bare procedural violation, divorced from any concrete harm," *Spokeo*, 578 U.S. at 341 (holding that *unopened, incorrectly formatted mailings* were a "bare procedural violation"). But Congress did not so overstep by enacting Section 1132(a)(9). Having one's pension replaced with risky annuities is plainly a palpable harm that is not "procedural." *Id.*

venue and personal jurisdiction provisions. *See* 29 U.S.C. § 1132(e)(2). But the Athene transaction stripped Plaintiffs of *all* these rights and protections: they are no longer protected by any fiduciary duties; they have no recourse against ATI (their former plan sponsor) if they do not receive their benefits; the Department of Labor will not police Athene's conduct; and, if Plaintiffs retirement benefits go unpaid, they will (at best) be left to sue Athene as third-party beneficiaries to the annuity contracts in piecemeal litigation in state courts around the country—an especially troubling prospect given Athene's dependency on, and opaque transactions with, its affiliates outside the reach of state courts. Compl. ¶¶ 51, 66–67, 73, 84 (Athene cedes these liabilities to its captive reinsurers in Bermuda); *Doherty*, 2025 WL 2774406, at *7–8 (describing this injury).

This loss of protections independently satisfies Article III. *Doherty*, 2025 WL 2774406, at *7–8; *Ross v. Bank of Am.*, 524 F.3d 217, 223–25 (2d Cir. 2008) (unlawful conduct forcing plaintiffs to proceed in an alternative forum if a dispute arose alone satisfied Article III); *Cognex Corp. v. Air Hydro Power, LLC*, 651 F. Supp. 3d 322, 327 (D. Mass. 2023) (similar). Plaintiffs made this argument in their briefing. Pls.' Opp. at 29. The R&R did not address it. And *Thole* does not undermine this basis for standing because the *Thole* plaintiffs (unlike Plaintiffs here) lost *none* of their ERISA protections, as they remained plan participants *after* the breach. 590 U.S. at 540, 542–43, 545–46 & n.2. Indeed, the *Thole* plaintiffs lacked standing precisely *because* of this fact, which meant they had no concrete interest in the allegedly squandered plan assets. *Id.*[13]

## IV.    Plaintiffs plausibly allege a risk of *future* harm that satisfies Article III.

Plaintiffs also plausibly allege standing based on the substantial risk Athene will default. *Doherty*, 2025 WL 2774406, at *5–7; *Konya*, 2025 WL 962066, at *7–9. A "future injury" suffices

---

[13] Defendants may oppose this basis for standing by arguing that under ERISA plan fiduciaries may sometimes terminate plans through the purchase of annuities and such lawful transactions would *also* cause the loss of ERISA protections described here. But that argument—which goes

if there is a "substantial risk" the harm will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152–53 (3d Cir. 2022) ("substantial risk" means a "realistic danger of sustaining a direct injury"). Because, as in *Doherty*, 2025 WL 2774406, at *5, "[n]o party disputes" that the failure to receive retirement benefits is an Article III injury, Plaintiffs have standing if, accepting their factual allegations as true and drawing all reasonable inferences in their favor, the Court can infer that there is a *substantial risk/realistic danger* of default. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); Pls.' Opp. at 22.

Plaintiffs more than satisfy that standard. They allege the Athene transaction created an "increased and substantial risk that they will not receive the benefit payments to which they are entitled." Compl. ¶ 54; *see also id.* ¶¶ 4, 7, 114, 122, 144, 154. This allegation is supported by numerous, specific factual allegations, including that Athene has a "high concentration of risky assets relative to its surplus"; "20% of Athene's portfolio is invested in risky asset-backed securities and leveraged loans"; and approximately "80%" of its liabilities from transactions like this one are reinsured through its Bermuda affiliates. *Id.* ¶¶ 51, 62; *see* Pls.' Opp. 16–18; *see also Doherty*, 2025 WL 2774406, at *5 (detailing materially identical allegations and explaining why the "substantial risk" standard is satisfied); *Konya*, 2025 WL 962066, at *8–10 (similar; "[T]he complaint alleges much more than a bare allegation that Athene might hypothetically fail.").

The R&R rejected this basis for standing based only on its statement that Plaintiffs "do no more than plead facts differentiating Athene from other viable annuity providers." R&R at 12. That is incorrect. Plaintiffs allege many facts supporting the inference that Athene is not only risky

---

to causation, not injury—misunderstands the Article III analysis by conflating the merits with standing and by ignoring that ERISA provides a cause of action for risky annuity transactions like the one at issue, which is what Plaintiffs assert here. *See* Pls.' Opp. at 42 & n.8; *Doherty*, 2025 WL 2774406, at *10 (rejecting the argument).

relative to peers but also risky relative to the security Plaintiffs enjoyed before the transaction and substantially likely to default. Compl. ¶ 59 (Athene's ranks 695 of 698 active insurers on a critical metric of claim paying ability); *id.* ¶¶ 89–95 (independent study found that Athene's debt is *14% riskier* than that of its safest peers, which itself is substantially riskier than government debt); *id.* ¶ 78 (Athene "uses practices that have been historically recognized by industry professionals to place an insurer at a substantial likelihood of default or insolvency," *e.g.*, holding risky assets on a thin surplus and engaging in circular transactions with Bermuda captives).

In fact, the R&R overlooked key factual allegations about Athene's risk of failure because it reviewed the wrong version of the complaint. The operative complaint in this case is the consolidated complaint at ECF No. 45-2. *See* ECF Nos. 49–52; Pls.' Opp. at 12; ECF No. 58 ("ATI Br.") at 9. But the R&R treated as operative the initial (pre-consolidation) complaint filed in *Schoen.* R&R at 2–4 (citing to, and addressing only, the complaint at ECF No. 1); *see also id.* at 1–2 (procedural history not mentioning the consolidation and the Court's acceptance of the consolidated complaint). And this oversight matters. The operative complaint added allegations that rebut the R&R's key conclusion that "Plaintiffs do no more than plead facts differentiating Athene from other viable annuity providers," R&R at 12. *See* Compl. (ECF No. 45-2) ¶¶ 78–88 (alleging that many of the specific risky practices Athene engages in also contributed to the failure of four insurers in 2024); *see also* ECF No. 45-3 ¶¶ 78–88 (redline of complaints showing additions). And the *Doherty* Court highlighted these very allegations as supporting its conclusion that the plaintiffs there had plausibly alleged a substantial risk of harm. *Doherty*, 2025 WL 2774406, at *6 ("The Complaint identifies similarities between Athene and recently failed insurers based on objective measures, including comparable surplus-to-liability ratio, and engagement in affiliated reinsurance far exceeding its surplus.") (internal quotation and citation omitted).

In sum, Plaintiffs allege more than enough to satisfy the pleading standard. *See Danvers*, 432 F.3d at 294 (Alito, J.) (pleading standard for Article III injury "is not Mount Everest"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."). And *Thole* supports this basis for standing because it suggested that even plaintiffs who are *not* ejected from their defined-benefit plan (as Plaintiffs were) may have standing if their fiduciaries' misconduct "substantially increased the risk" that benefits would not be timely paid. 590 U.S. at 546 (rejecting this theory only because it was not "plausibly and clearly alleged").[14]

**V.     Plaintiffs have standing even setting aside their economic harm.**

Last, Plaintiffs would have standing under *TransUnion* even absent financial loss. The common law of trusts, dating to the Founding, supports a plaintiff's right to sue for breach of fiduciary duty to recover at least disgorgement, regardless of economic harm. *See* 1 Joseph Story, Commentaries on Equity Jurisprudence 318 (Boston, Hilliard, Gray & Co. 1837). The Supreme Court has recognized this tradition *after Thole*. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 287–88 (2021) (approvingly citing Justice Story for the proposition that "[t]he law tolerates no farther inquiry" into harm when a common law right is violated). And this tradition applies directly to ERISA breach of fiduciary duty claims seeking disgorgement. *Edmonson v. Lincoln Nat. Life*

---

[14] Defendants' chief attack on this basis for standing was to rely on *55* exhibits spanning more than *500* pages to dispute Plaintiffs' factual allegations and the reasonable inferences drawn therefrom. The R&R correctly ignored that material, which had no place in Defendants' admittedly "facial" standing challenge, ATI Br. at 10. This Court too should reject Defendants' attempt to rebut Plaintiffs' allegations of injury by relying on extrinsic materials (many of which Defendants sliced up and redacted without justification) that have not been subjected to adversarial testing. Pls.' Opp. at 22–25, 36–38; *see Doherty*, 2025 WL 2774406, at *6 & n.7 (rejecting defendants' attempt to inject facts into the case through extrinsic documents meant to "controvert the conclusion" that Athene is at a "substantial risk of default"); *Konya*, 2025 WL 962066, at *13 (similar); *Piercy* R&R, 2025 WL 2505660, at *37–38 & n.27 (similar).

*Ins. Co.*, 725 F.3d 406, 415–418 (3d Cir. 2013); *Perelman v. Perelman*, 793 F.3d 368, 373 n.4 (3d Cir. 2015). Indeed, *Edmonson* controls. *See* Pls.' Opp. at 34.

*Edmonson* held that "[a] financial loss is not a prerequisite for standing to bring a disgorgement claim under ERISA," and that injury-in-fact is satisfied when (i) "a defendant allegedly breaches its fiduciary duty"; (ii) "profits from the breach"; and (iii) the plaintiff, "as opposed to the plan, has an individual right to the profit." 725 F.3d at 417–418. All three requirements are satisfied here. Plaintiffs allege a fiduciary breach. Compl. ¶¶ 149–56. Plaintiffs allege Defendants profited from the breach. *Id.* ¶¶ 108, 128–30; Pls.' Opp. at 15–16, 20–21 (explaining that Defendants profited from selecting Athene, precisely because its annuities are cheap and risky). And Plaintiffs seek, and each have an *individual* right to, disgorgement. Compl. ¶¶ 5, 7, 155; 29 U.S.C. § 1132(a)(9) (empowering "any individual" to "obtain appropriate relief" to remedy breaches caused by such annuity transactions); 29 U.S.C. § 1109.

The R&R rejected this basis for standing based on only its conclusion that under *Thole* Plaintiffs "possess no equitable or property interest in the plan," R&R at 11 (quoting *Thole*), and thus have "no entitlement to any profits that ATI may have received," *id.* But *Thole* rejected the trust-law analogy only because it did not "fit [that] case." 590 U.S. at 542–43. Because the plaintiffs continued to be defined-benefit plan participants *after* the breach, they were "not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan." *Id.* at 542–43; *see id.* at 548 (Thomas, J., concurring) (rejecting this historical basis for standing because the plaintiffs' continued status as plan participants meant that "none of the rights" they identified "belong[ed] to them" and they "had no legal or equitable ownership interest in plan assets"). However, that reason for rejecting the trust-law theory in *Thole is* the key distinction between *Thole* and this case: Plaintiffs are no longer plan participants.

Put simply, *Thole's* rejection of the specific trust-law theory tendered there (based on a fiduciary breach claim fundamentally different from Plaintiffs') did not abrogate the tradition and precedent holding that a fiduciary breach may be remedied by disgorgement even absent economic loss—a point multiple courts have recognized. *See, e.g.*, *Peters v. Aetna, Inc.*, 2 F.4th 199, 219 (4th Cir. 2021) (holding *after Thole* that even in the absence of "financial injury," plaintiffs have standing to seek at least disgorgement and injunctive relief); *Konya*, 2025 WL 962066, at *10–11 (this is an "alternative" basis for standing).

## CONCLUSION

Plaintiffs "doubtlessly have a concrete stake in this dispute" and plausibly allege standing. *Doherty*, 2025 WL 2774406, at *9. At minimum, any dismissal should be *without prejudice*. *Aldossari v. Ripp,* 49 F.4th 236, 262 (3d Cir. 2022). In the event of dismissal, Plaintiffs would move for leave to amend the Complaint to add allegations supporting standing, including facts further establishing the substantial risk of Athene's default. *Supra* at 14–17. Any rejection of that basis for standing would be based on the asserted absence of factual allegations, *not* any fatal legal defect, for none has been identified. *See* R&R at 12.

Dated: October 21, 2025

/s/ *Jerome J. Schlichter*
SCHLICHTER BOGARD LLC
Jerome J. Schlichter (MO 32225)*
Sean E. Soyars (MO 57317)*
Kurt C. Struckhoff (MO 61873)*
Patrick R. Kutz (MO 66023)*
100 South Fourth Street, Suite 1200
Saint Louis, Missouri 63102
(314) 621-6115, (314) 621-7151 (fax)
jschlichter@uselaws.com
ssoyars@uselaws.com
kstruckhoff@uselaws.com
pkutz@uselaws.com

Respectfully submitted,

/s/ *John A. Schwab*
JOHN A. SCHWAB, ATTORNEY AT LAW, LLC
John A. Schwab (PA 89596)
436 Seventh Avenue, Suite 300
Pittsburgh, Pennsylvania 15219
(412) 235-9150
jas@johnschwablaw.com

/s/ *Cyril V. Smith*
ZUCKERMAN SPAEDER LLP
Cyril V. Smith (MD 9012190277)*
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202

*admitted *pro hac vice*

*Interim Lead Class Counsel for the Proposed Class*

/s/ *Edwin J. Kilpela, Jr.*
WADE KILPELA SLADE LLP
Edwin J. Kilpela, Jr. (PA 201595)
Paige T. Noah (PA 327552)
6425 Living Place, Suite 200
Pittsburgh, Pennsylvania 15206
(412) 314-0515
ek@waykayslay.com
pnoah@waykayslay.com

(410) 949-1145, (410) 659-0436 (fax)
csmith@zuckerman.com

/s/ *Bryan M. Reines*
Bryan M. Reines (CA 336269)*
2100 L Street N.W., Suite 400
Washington, D.C. 20037
(202) 778-1846, (202) 822-8106 (fax)
breines@zuckerman.com

/s/ *Edward Stone*
EDWARD STONE LAW, P.C.
Edward Stone (NY 2259489)*
175 West Putnam Avenue, Second Floor
Greenwich, Connecticut 06830
(203) 504-8425, (203) 348-8477 (fax)
eddie@edwardstonelaw.com

/s/ *Elizabeth Hopkins*
HOPKINS ERISA LAW
Elizabeth Hopkins (CA 324431)*
12123 Laurel Terrace Drive
Studio City, CA 91604
(301) 938-7516
hopkinserisalaw@outlook.com

Susan L. Meter (CA 236133)*
KANTOR & KANTOR
19839 Nordhoff Street
Northridge, California 91324
(818) 886-2525, (818) 350-6272 (fax)
smeter@kantorlaw.net

/s/ *Douglas S. Brooks*
LIBBY HOOPES BROOKS & MULVEY, P.C.
Douglas S. Brooks (MA 636697)
260 Franklin Street
Boston, Massachusetts 02110
(617) 338-9300, (617) 338-9911 (fax)
dbrooks@lhbmlegal.com

*admitted *pro hac vice*

*Interim Co-Counsel for the Proposed Class*

20

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on October 21, 2025, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to counsel of record.


                                          /s/ *John A. Schwab*
                                          John A. Schwab