**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM L. SCHOEN; *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:24-CV-1109 |
| vs. | ) | |
| | ) | |
| ATI INC.; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM ORDER</u>

A class of former Allegheny Technologies Incorporated (ATI) employees brings claims against the company, its administrative committee and committee members, and its fiduciary for violations of the Employee Retirement Income Security Act of 1974 (ERISA).  ECF 1.  Plaintiffs argue that ATI breached various statutory and fiduciary duties in completing a pension risk transfer (PRT) that offloaded ATI's ERISA-governed pension plan to the private equity insurance firm, Athene Annuity and Life Assurance Company.  *Id.*  ATI moved to dismiss for lack of Article III standing.  ECF 52.  Magistrate Judge Kezia O.L. Taylor issued an R&R ruling in favor of ATI because none of the harms alleged were actual or imminent.  ECF 100. Plaintiffs objected to the R&R, ECF 101, and the objections are now fully briefed, *see* ECF 103, ECF 107.  On *de novo* review, the Court agrees with Judge Taylor's assessment and so will adopt her report, grant ATI's motion, and dismiss the complaint.

Plaintiffs argue that the PRT at issue caused the following harms: (1) a reduction in the present value of their rights to receive retirement payments; (2) a violation of their quasi-contractual rights to receive the "safest annuity available," *see* 29 C.F.R. § 2509.95-1(c) (2026); (3) the loss of their pensions' ERISA-mandated

- 1 -

protections; (4) a breach of fiduciary duty under the common law of trusts; and (5) the creation of a substantial risk of future harm—if Athene were to go under and thereby reduce their pension payments. ECF 102. Judge Taylor found the first four types of harm precluded by the Supreme Court's decision in *Thole v. U.S. Bank N.A.*, and the Court agrees. 590 U.S. 538 (2020). *Thole* "makes clear that Plaintiffs' only cognizable interest is in receiving their monthly benefits, which have been unaffected by the PRTs—and will remain unaffected 'regardless of how well or poorly' Athene's assets are managed." *Camire v. Alcoa USA Corp.*, No. CV 24-1062 (LLA), 2025 WL 947526, at \*3 (D.D.C. Mar. 28, 2025) (quoting *Thole*, 590 U.S. at 543). "There is no ERISA exception to Article III." *Thole*, 590 U.S. at 547.

By contrast, standing from the fifth type of harm alleged—that the PRT created a substantial risk because Athene is a risky insurer—isn't precluded by *Thole*. *Konya v. Lockheed Martin Corp.*, No. CV 24-750-BAH, 2025 WL 962066, at \*8 (D. Md. Mar. 28, 2025), *motion to certify appeal granted*, No. CV 24-750-BAH, 2025 WL 2050997 (D. Md. July 22, 2025); *Camire*, 2025 WL 947526, at \*6. So the Court must consider whether Plaintiffs' allegations create a cognizable injury to confer Article III standing.

It's a close call,[1] but ultimately the Court agrees with Magistrate Judge Taylor's conclusion.

---

[1] The Court acknowledges that other courts have reasonably found almost the same evidence "so egregious that it substantially increased the risk that Plaintiffs' [Athene-owned] retirement plan would fail and be unable to pay the participants' future pension benefits." *Konya*, 2025 WL 962066, at \*8 (quoting *Thole*, 590 U.S. at 546) (cleaned up); *see Doherty v. Bristol-Myers Squibb Co.*, No. 24-CV-06628 (MMG), 2025 WL 2774406, at \*6 (S.D.N.Y. Sept. 29, 2025) ("[T]hese allegations suffice to show that the Athene transaction put Plaintiffs at a substantial risk of losing their benefits."). But the Court differs in its application of the "substantial risk" standard.

Plaintiffs allege some evidence pointing at the risks of an Athene-run pension, including that: "Athene has a high concentration of risky assets relative to its surplus; 20% of Athene's portfolio is invested in risky asset-backed securities and leveraged loans; [] approximately 80% of [Athene's] liabilities from transactions like this one are reinsured through its Bermuda affiliates"; "Athene[] ranks 695 of 698 active insurers on a critical metric of claim paying ability"; an "independent study found that Athene's debt is 14% riskier than that of its safest peers"; Athene is owned by a private equity firm, and private equity firms default at higher rates than non-private equity-owned companies; "Athene uses practices [including holding risky assets on a thin surplus and engaging in circular transactions with Bermuda captives] that have been historically recognized by industry professionals to place an insurer at a substantial likelihood of default or insolvency"; and these practices appear to have contributed to the failing of Columbian Life Insurance Company, Columbian Mutual Life Insurance Company, PHL Variable Insurance Company, and 777 Reinsurance Limited. ECF 101 at 20–21 (citing allegations in amended complaint) (cleaned up); ECF 45-2 at ¶¶ 52, 78–79. Plaintiffs also point to the parallels between Athene today and Executive Life Insurance in the early 1990s; Executive Life's collapse led Congress to pass the very ERISA amendment under which Plaintiffs bring this action and led then-President Clinton to promulgate the regulatory framework that supports Plaintiffs' theories. ECF 45-2 at ¶¶ 42–44; *see* 29 U.S.C. § 1132(a)(9)*;* 29 C.F.R. § 2509.95-1 (2026).

The Court finds, though, that these allegations don't create the necessary "'substantial risk' that the harm" at issue—losing pension benefits—"will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). "While plaintiffs are not required

'to demonstrate that it is literally certain that the harms they identify will come about,' a 'possible future injury'—even one with an 'objectively reasonable likelihood' of occurring—is not sufficient. . . . [W]here the future injury is . . . hypothetical, there can be no imminence and therefore no injury-in-fact." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 153 (3d Cir. 2022) (quoting *Clapper*, 568 U.S. at 409-10, 414 n.5) (cleaned up).

Here, assuming all allegations as true, the closest Plaintiffs come to a projection that there's a substantial risk that Athene will default on their pension payments is by referencing a study showing the economic loss to beneficiaries of a company choosing Athene as 14% and the price of Athene bonds' risks as 21% higher than U.S. treasuries. ECF 45-3 at ¶ 89 (citing David Eichorn, *Pension Risk Transfers (PRT) May Be Transferring Risk to Beneficiaries*, NISA Investment Advisors, LLC (2022), https://www.nisa.com/perspectives/pension-risk-transfers-prtmay-be-transferring-risk-to-beneficiaries/). Considering this evidence together with the rest of the complaint, Plaintiffs haven't shown anything more than an "objectively reasonable likelihood" that Athene will fail. The risk alleged is hypothetical because it "relies on pure speculation that . . . unfavorable conditions will . . . occur . . . in a manner that will impact the relevant investments." *Bueno v. Gen. Elec. Co.*, No. 1:24-CV-0822 (GTS/DJS), 2025 WL 2719995, at *18 (N.D.N.Y. Sept. 24, 2025).

At the same time, Plaintiffs "rel[y] on a highly attenuated chain of possibilities." *Camire*, 2025 WL 947526, at *7 (quoting *Clapper*, 568 U.S. at 410). "[T]here are several events that would need to take place before Plaintiffs could ever experience the harm they are concerned about. First, Athene would need to fail, which means that it would have to (1) suffer catastrophic losses; (2) fail to sufficiently mitigate any such losses to preserve Plaintiffs' benefits; and (3) fail to secure

alternative funding sources. Then, Plaintiffs would need to have benefits that actually exceed the amount that their [state guaranty associations] cover, which is over $250,000 in most states. Finally, Athene's accounts would need to be underfunded or insufficient to cover participants' losses in the event of failure." *Id.* (cleaned up).

Plaintiffs allegations themselves demonstrate the tenuous nature of this chain: "they do not allege that [the four similarly situated, failed insurers] have actually defaulted on their obligations to pay annuitants since being placed in rehabilitation by regulators"—just that these pensioners now face higher risks of losing their pensions. ECF 45-3 at ¶¶ 79–85. *Bueno*, 2025 WL 2719995, at \*17. Based on this albeit small sample size, it seems more likely than not that, even if Athene failed, Plaintiffs would still see no reduction in their retirement payments.

In sum, Plaintiffs haven't plausibly alleged that there is a significant likelihood Athene would default to a degree that their pensions would be affected. The Court therefore **ADOPTS** Judge Taylor's R&R (ECF 100) as the opinion of the Court, **GRANTS** Defendants' motion to dismiss (ECF 52), and **DISMISSES** the complaint (ECF 1). This dismissal is without prejudice because it is on standing grounds, but nonetheless represents a final order of the Court. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020) ("Dismissal for lack of standing reflects a lack of jurisdiction, so dismissal of [the] amended complaint should have been without prejudice."); *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 209 (3d Cir. 2021) ("[D]ismissal for lack of standing is generally without prejudice."). So, the Clerk of Court shall **CLOSE** this case.

- 5 -

DATED this 27th day of July, 2026.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge